[990 NYS2d 605]

Laurie Braverman et al., Appellants, v Bendiner & Schlesinger, Inc., et al., Respondents.

Second Department, August 6, 2014

APPEARANCES OF COUNSEL

*Robert N. Isseks*, Middletown, and *Bloom & Bloom, P.C.*, New Windsor (*Kevin Bloom* of counsel), for appellants.

*Kaufman Borgeest & Ryan LLP*, Valhalla (*Jacqueline Mandell* of counsel), for respondent Bendiner & Schlesinger, Inc.

*Nicoletti, Gonson, Spinner & Owen, LLP*, New York City (*Michael S. Brown* and *Edward S. Benson* of counsel), for respondent Daytop Village, Inc.

## OPINION OF THE COURT

Skelos, J.

In *Landon v Kroll Lab. Specialists, Inc.*, (22 NY3d 1, 6-7 [2013]), the plaintiff sought to recover damages from a drug testing laboratory, alleging that it negligently reported his drug test as positive. The Court of Appeals, in affirming an opinion

and order of this Court (*see Landon v Kroll Lab. Specialists, Inc.*, 91 AD3d 79 [2011]), recognized that a drug testing laboratory had a duty to the subject of a drug test to adhere to relevant professional standards in performing such testing. The plaintiffs in this case similarly claim that they suffered adverse consequences when the positive results of drug tests, performed by the defendant Bendiner & Schlesinger, Inc. (hereinafter Bendiner), were reported to drug treatment courts by the defendant drug treatment center, Daytop Village, Inc. (hereinafter Daytop). However, the plaintiffs in this case do not take issue with the manner in which the tests were performed or challenge the accuracy of the results reported. Rather, the plaintiffs assert that the testing met only clinical, not forensic standards, and that, accordingly, the results should not have been admitted as evidence in court. They argue that Bendiner and Daytop had a duty to label the drug test results or provide a disclaimer indicating that the results were only to be used for clinical, not forensic, purposes. We find this to be an unwarranted expansion of the duty set forth in *Landon*, and, therefore, affirm the judgment in favor of Bendiner and Daytop, dismissing the complaint.

The plaintiff Laurie Braverman was a respondent in a child protective proceeding commenced in the Family Court, Rockland County, and the plaintiff Cindy Lohmeyer was a defendant in a criminal proceeding commenced in the County Court, Rockland County. Both plaintiffs have well-documented histories of substance abuse, and were brought under the jurisdiction of the drug treatment courts established in Rockland County (*see generally* 22 NYCRR 43.1, 143.1-143.3). The plaintiffs each sought, and were granted, conditional supervision by these courts, according to which they voluntarily entered into a contract to abide by certain specified terms and conditions, including: abstinence from substance abuse, enrollment in a substance abuse treatment program, submission to random drug and alcohol testing, and the release of information from the treatment facility, such as the results of drug testing, to the supervising court or an ancillary agency. The plaintiffs each enrolled in a program at Daytop, a drug treatment center. They executed contracts and release forms, pursuant to which they acknowledged that enrollment at Daytop was voluntary, and authorized the release of information from Daytop to the relevant drug treatment court or its ancillary agencies.

Daytop contracted with Bendiner, a laboratory certified by the New York State Department of Health (hereinafter the NYSDOH), to perform specified drug testing. To the extent

applicable here, the contract required Bendiner to perform *clinical* drug testing on oral fluid samples obtained by Daytop from its clients. The contract did not require Bendiner to perform *forensic* drug testing on the oral fluid samples. According to the permit issued by the NYSDOH under which Bendiner was operating at the time the subject testing was performed and reported, clinical testing was intended to "assist medical professionals in patient management," whereas forensic testing "generate[s] results in a manner intended to insure acceptance into evidence in a court of law." Among other things, forensic testing involves "protocols for specimen chain-of-custody and laboratory security." The contract between Bendiner and Daytop prohibited Bendiner from reporting the results of its drug testing to any entity other than Daytop, and further provided that Bendiner would only perform confirmatory testing upon a specific request made by Daytop.

In conformance with the contract, Bendiner performed oral fluid testing on specimens collected by Daytop from the plaintiffs. The specimens obtained from the plaintiffs were positive for certain illegal drugs. Bendiner reported the results to Daytop, and, at Daytop's request, Bendiner performed confirmatory gas chromatography and mass spectrometry testing. Daytop then reported the confirmed positive results of the testing done on Braverman's sample to the drug treatment part of the Family Court, Rockland County, also known as the Rockland County Family Treatment Court. As a result, a violation petition was filed against Braverman, and the return of her children to her custody was delayed for approximately five months. Daytop also reported the confirmed positive results of the testing done on Lohmeyer's sample to the drug treatment part of the County Court, Rockland County, also known as the Rockland County Drug Court. Consequently, Lohmeyer's participation in the drug treatment court program was terminated, and she was incarcerated for approximately five months.

The plaintiffs subsequently commenced this action to recover damages against Bendiner and Daytop. As clarified by the plaintiffs' counsel during the course of the litigation, the plaintiffs do not challenge the manner in which Bendiner performed its clinical oral fluid testing. The plaintiffs acknowledged that Bendiner performed the testing "in a manner suitable for clinical purposes," and that the "validity of its testing procedures" were not at issue. The plaintiffs alleged, however, that Bendiner was required, and failed, to label its oral fluid

test results so as to indicate that the results were to be used for clinical purposes only. The plaintiffs relied on the opinion of Terry D. Hall, Ph.D., who averred that the reports of the test results issued by Bendiner were required to include the following disclaimer: "For Diagnostic Treatment Plan Development and Counseling Purposes Only: Not for Workplace or Forensic Purposes." The plaintiffs further contended that Daytop was required to provide a similar disclaimer when reporting the results to the drug treatment courts. At its essence, the plaintiffs' contention is limited, to wit: in the absence of such a label or disclaimer, the defendants failed to exercise reasonable care in reporting the positive drug test results.

Bendiner and Daytop separately moved, inter alia, for summary judgment dismissing the complaint insofar as asserted against each of them. They argued that they had no duty to the plaintiffs to provide a label or disclaimer indicating that the results were to be used only for clinical purposes, and, in any event, that any breach of such a duty was not the proximate cause of the plaintiffs' injuries.

The Supreme Court granted those branches of the defendants' motions which were for summary judgment dismissing the complaint insofar as asserted against each of them. Relying on this Court's opinion and order in *Landon* (91 AD3d 79), the Supreme Court concluded that Bendiner owed a duty of care to the plaintiffs, and noted that there was no authority establishing a "corresponding or analogous duty on the part of Daytop." The Supreme Court did not determine whether or not Daytop had any such duty. Further, the Supreme Court did not make a finding that Bendiner breached a duty of care. Rather, it held that, in the event that there was any such wrongdoing by Bendiner or Daytop, any breach of a duty of care was not a proximate cause of the plaintiffs' alleged damages. In this respect, the Supreme Court determined that the unforeseeability of the outcome of the judicial proceedings in the neglect proceeding against Braverman and in the criminal action against Lohmeyer, particularly with respect to the admissibility of the drug test results, broke the chain of legal causation.

We agree that the defendants' motions should have been granted and the complaint dismissed, but for a reason different from that relied upon by the Supreme Court. We conclude, more fundamentally, that Bendiner did not have a duty to the plaintiffs to label its drug test results with a disclaimer, and that Daytop, when reporting the results to the drug treatment

courts, did not have a duty to the plaintiffs to provide a disclaimer indicating that the positive test results were to be used for clinical purposes only. Thus, we affirm the judgment on that basis, without reaching the secondary question of proximate cause.

It is axiomatic that the breach of a duty owed by a defendant to a plaintiff is essential to recovery in a negligence action (*see Pulka v Edelman*, 40 NY2d 781, 782 [1976]; *Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 342 [1928]). In the absence of a legislative declaration, it is for the courts to determine, as a matter of policy, "whether the risk to which one person exposes another is within the protection of the law" and if so, to declare the existence of a duty (*De Angelis v Lutheran Med. Ctr.*, 58 NY2d 1053, 1055 [1983]; *see Lauer v City of New York*, 95 NY2d 95, 100 [2000]; *Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 585 [1994]; *Turcotte v Fell*, 68 NY2d 432, 437-438 [1986]; *Alnashmi v Certified Analytical Group, Inc.*, 89 AD3d 10, 13-14 [2011]). In answering that question, the courts may consider "logic, science, weighty competing socioeconomic policies and sometimes contractual assumptions of responsibility" (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d at 585).

In *Landon*, this Court was "called upon to determine whether a drug testing laboratory may be held liable in tort to the subject of a drug test for negligently testing that subject's biological specimen notwithstanding the absence of a formal contractual relationship" between the laboratory and the test subject (*Landon*, 91 AD3d at 80). The plaintiff in *Landon* alleged that the defendant laboratory had failed to use proper and scientifically reliable testing protocols and that, as a consequence, its testing yielded a false positive result, as compared to two contemporaneous drug screens performed by a laboratory selected by the plaintiff, which were negative.

In determining whether a duty was properly imposed upon the laboratory, this Court weighed the burden of imposing such liability against "the benefits of stemming negligent drug testing" (*id.* at 88). The Court recognized "[t]he importance attached to the results of drug tests" (*id.*), and opined that it was "paramount that incentives exist to minimize the risk of *erroneous* test results" (*id.* at 89 [emphasis added]). Accordingly, this Court held that "a drug testing laboratory may be held liable in tort to the subject of a drug test for failing to use reasonable care under the circumstances, notwithstanding the absence of a formal contractual relationship between the drug testing laboratory and the subject of the drug test" (*id.* at 90).

The Court of Appeals affirmed this Court's opinion and order in *Landon* and reasoned that, accepting the allegations of the complaint as true, the laboratory's "releas[e] [of] a report finding that plaintiff had tested positive for [drug use]" would constitute the " 'launch[ing] [of] a force or instrument of harm' " (*Landon*, 22 NY3d at 6, quoting *Espinal v Melville Snow Contrs.*, 98 NY2d 136, 140 [2002]). The Court of Appeals also concluded that there were "strong policy-based considerations that counsel[ed] in favor of finding that [the laboratory] owed a duty to plaintiff," since "the release of a false positive report [would] have profound, potentially life-altering, consequences," "[t]he laboratory [was] in the best position to prevent false positive results," and "there [was] no apparent statutory remedy for a victim of negligence . . . caused by a false positive drug test" (*Landon*, 22 NY3d at 6, 7). Thus, the Court held that the laboratory had "a duty to the test subject to perform his drug test in keeping with relevant professional standards," despite the lack of a contractual relationship (*id.* at 6-7).

*Landon* makes clear that there is a duty running from a drug testing laboratory to the subject of a drug test despite the lack of a contractual relationship between those parties. Further, it cannot be gainsaid that Daytop owes some duty of reasonable care to individuals it treats. The question presented here, as to both defendants, concerns the proper scope of that duty. More particularly, the question is whether the defendants' duty of reasonable care includes the duty to label or place a disclaimer on a report, so as to indicate that the results are to be used only for clinical purposes.

Both the Court of Appeals' decision and this Court's decision in *Landon* focused on the laboratory's alleged negligent performance of drug testing, which yielded false positive results. Further, the Court of Appeals described the duty imposed on a laboratory as a duty "to perform [a] drug test in keeping with relevant professional standards" (*Landon*, 22 NY3d at 6-7). Here, as previously explained, the plaintiffs acknowledge that the validity of Bendiner's testing procedures is not at issue, and admit that the clinical testing was properly performed. Moreover, there are no professional standards implicated in this case. While the plaintiffs' expert conclusorily asserted that the absence of a disclaimer or label was a departure from accepted scientific procedures, that contention is unsupported by reference to statutory, regulatory, or professional standards and, as such, it is without probative value (*see Diaz v New York Down-*

*town Hosp.*, 99 NY2d 542, 544 [2002]; *Dmytryszyn v Herschman*, 98 AD3d 715 [2012]). Thus, the duty set forth in *Landon* is not directly applicable in the present case.

Moreover, the reasoning employed in *Landon* cannot be extended to the present circumstances. The Court of Appeals, in imposing a duty upon the laboratory in favor of a party with whom it had no contractual relationship, relied, in part, upon the exception to the rule against such liability for conduct that constitutes launching a force or instrument of harm (*see Landon*, 22 NY3d at 6, citing *Espinal*, 98 NY2d at 141-142). However, in applying that exception in prior cases, the courts have distinguished between situations where a "putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm" and those in which such a party has merely "stopped where inaction is at most a refusal to become an instrument for good" (*Moch Co. v Rensselaer Water Co.*, 247 NY 160, 167, 168, 169 [1928] [the defendant could not be held liable in tort because its "negligent omission" constituted only "the denial of a benefit," not the launching of a force of harm]; *see Church v Callanan Indus.*, 99 NY2d 104, 112 [2002] ["failure to install the additional length of guiderail did nothing more than neglect to make the highway . . . *safer*"]; *see also Bono v Halben's Tire City, Inc.*, 84 AD3d 1137, 1139 [2011] [defendant automobile repair shop's failure to warn a party that his vehicle brakes could fail if he did not replace the master cylinder on his car did not constitute the launching of a force or instrument of harm]; *Altinma v East 72nd Garage Corp.*, 54 AD3d 978, 980 [2008] [a defendant's alleged negligent failure to warn the decedent's employers regarding man-lift or elevator inspection requirements amounted to "a finding that (the defendant) merely may have failed to become 'an instrument for good,' which (was) insufficient to impose a duty of care"]). In other words, liability will not be imposed where a party's conduct "is at most the denial of a benefit" (*Moch Co. v Rensselaer Water Co.*, 247 NY at 169; *see Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226 [1990]).

Here, there being no claim that the defendants released a false positive drug test, the plaintiffs seek to hold the defendants liable for the mere denial of a benefit—a label or disclaimer as to the clinical nature of the results that would alert attorneys and courts to the inadmissibility of the test results as evidence in court (*see Altinma v East 72nd Garage Corp.*, 54 AD3d at 980; *see also Bono v Halben's Tire City, Inc.*, 84 AD3d at 1139).

Imposing liability upon the defendants for the failure to confer this benefit would enlarge the duty imposed in *Landon* in such a manner as to unduly extend the zone of liability (*Moch Co. v Rensselaer Water Co.*, 247 NY at 168-169).

Further, we acknowledge that it was foreseeable, in light of the special conditions imposed by the respective drug treatment courts and the authorizations for release of records executed by the plaintiffs in connection with those proceedings and with the treatment at Daytop, that the results of the plaintiffs' drug testing would be submitted to the relevant court. Nevertheless, "the boundaries of duty are not simply contracted or expanded by the notion of foreseeability" (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d at 586; *see Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 232 [2001]; *Pulka v Edelman*, 40 NY2d at 782). We must also consider "contractual assumptions of responsibility" (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d at 585), and the nature of the plaintiffs' relationship with the defendants, because "risk imports relation" (*id.* [emphasis omitted], quoting *Palsgraf v Long Is. R.R. Co.*, 248 NY at 344).

The nature of the relationship between the plaintiffs and the defendants is a particularly important consideration in defining the scope of the duty of care in this case. Although "[l]iability in negligence may . . . rest on some . . . nondisclosure on the part of defendant by which plaintiff or a third party is misled," to impose such liability "the relationship of the parties . . . must be such that . . . the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care" (*Eiseman v State of New York*, 70 NY2d 175, 187, 188 [1987] [internal quotation marks omitted]; *International Prods. Co. v Erie R.R. Co.*, 244 NY 331, 338 [1927]). "The basis of liability is the fact that the . . . nondisclosure has led the person to whom it was made to forego [sic] action that might otherwise have been taken for the protection of the plaintiff " (*Eiseman v State of New York*, 70 NY2d at 187).

There was no such relationship between the plaintiffs and Bendiner and Daytop in this case. In the absence of privity of contract between the plaintiffs and Bendiner, and the absence of an undertaking by Bendiner in its contract with Daytop requiring Bendiner to affirmatively label the test results as clinical in nature, there is nothing to reasonably suggest that Bendiner was taking action to protect any of the test subjects, including the plaintiffs, from the admission in court of the

results of drug testing that was performed in accordance with accepted professional clinical standards. Accordingly, there was no basis for the plaintiffs to rely upon Bendiner for that purpose.

As to Daytop, the plaintiffs, like other clients at drug treatment centers, enrolled in Daytop seeking clinical help for their respective drug dependencies. Thus, although the plaintiffs enrolled in the Daytop program and agreed to random testing and the release of information in order to comply with certain conditions imposed by the drug treatment courts, they are, in essence, no different than those of Daytop's clients who are not involved with the court system. They all want and need treatment. To treat the plaintiffs differently would be to cynically suggest that the plaintiffs attended Daytop only to avoid more severe sanctions, as opposed to enrolling for the salutary purpose for which the drug treatment courts were created, which is to provide an integrated program to address substance abuse issues. Daytop fulfilled its role by properly performing drug testing on the plaintiffs so as to monitor their treatment progress. There is nothing to reasonably suggest that Daytop undertook to protect the plaintiffs from a court's consideration of the results of drug testing, which was performed in accordance with accepted professional clinical standards, or that the plaintiffs had a right to rely upon Daytop to so protect them.

Indeed, in *Landon,* the Court of Appeals specifically recognized that a drug testing laboratory was "in the best position to prevent false positive results . . . in keeping with relevant professional standards" (*Landon,* 22 NY3d at 6-7). In the present context, however, it is clear that the social benefit to be gained by imposing the duty that the plaintiffs now suggest should be imposed upon the defendants is achieved by the nature of the adversarial process already in place. The plaintiffs, and others similarly situated, have the benefit of attorneys who are directly responsible for representing their interests in court, and the benefit of the members of the judiciary, who are the gatekeepers directly responsible for protecting the integrity of the court proceedings. Accordingly, there is no overriding social benefit to be achieved from imposing such a duty on laboratories and drug treatment centers beyond the duty to perform the tests in accordance with professionally accepted standards and to report the tests accurately.

My concurring colleagues recognize the significance of the role of counsel and the courts in preventing a court's consideration, for evidentiary purposes, of test results that did not meet

forensic standards, inasmuch as they conclude that counsels' failures to investigate and object to the courts' consideration of the drug test results, and the courts' determinations to rely on those results, were so significant as to break the causal nexus between Bendiner's and Daytop's alleged negligence and the plaintiffs' injuries. It would be incongruous to make the policy-laden decision to require laboratories and drug treatment centers to issue labels and disclaimers as to the nonforensic nature of drug test results in order to prevent the use of such tests in court and then to effectively absolve them of liability based upon the role of counsel and the courts in the gatekeeping process. The willingness of our concurring colleagues to so absolve a laboratory and drug treatment center from liability calls into question the utility of the duty they seek to impose. As this case demonstrates, that duty, under the analysis suggested by my concurring colleagues, would be illusory.

Moreover, as alluded to above, the performance and use of drug tests by laboratories and treatment centers are not limited to individuals who are the subject of court proceedings. Rather, many clinical drug test results are received by treatment centers for individuals who are simply seeking treatment independent of any court proceedings. To place a broad duty on laboratories and treatment centers that would only serve to protect a fraction of the population they serve fails to narrowly tailor the scope of duty so as to properly balance the social benefit of the duty with its costs and burdens (*see generally Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 236 [2001]).

In sum, *Landon* cannot be read to affirmatively require a laboratory or drug treatment center to label drug tests or give a disclaimer so as to indicate that the tests are only to be used for clinical purposes. Thus, *Landon* does not dictate the result in this case. Further, since the social benefit of protecting the population of drug-test subjects who are involved with the drug treatment courts from having nonforensic drug tests admitted in court is satisfied by the adversarial process, it is inappropriate to extend the scope of the duty of a laboratory and drug treatment center to include the duty to provide such labels and disclaimers.

Accordingly, we affirm the judgment in favor of Bendiner and Daytop, dismissing the complaint, on the basis that they had no duty, as the plaintiffs allege, to label the plaintiffs' drug test results, or to provide a disclaimer indicating that the results were to be used for clinical purposes only.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on appeal from the order are brought up for review and have been considered on appeal from the judgment (*see* CPLR 5501 [a] [1]).

DICKERSON, J. (concurring). On this appeal, we consider whether a drug-testing laboratory and a substance abuse treatment facility violated any duty owed to the plaintiffs by failing to indicate that certain drug test results were derived from testing and analyses performed in conformance with clinical, but not forensic, standards. We also consider whether, if those entities did breach a duty owed to the plaintiffs, such breach was a proximate cause of the injuries sustained by the plaintiffs. I agree with my colleagues in the majority in concluding that the judgment must be affirmed. However, I write this concurrence to expressly state that, unlike my colleagues in the majority, I conclude that both defendants breached the duty owed to the plaintiffs, announced in *Landon v Kroll Lab. Specialists, Inc.* (91 AD3d 79 [2011], *affd* 22 NY3d 1 [2013]), to employ reasonable care in analyzing their samples and reporting the test results by failing to provide any indication that the test results were to be used for clinical purposes only, and were not valid for forensic use. However, because I further conclude that, here, the defendants' breaches were not a proximate cause of the plaintiffs' injuries, I agree with the majority that the judgment must be affirmed.

The plaintiff Laurie Braverman was a party in proceedings before the drug treatment part of the Family Court, Rockland County (hereinafter the Rockland County Family Treatment Court). The plaintiff Cindy Lohmeyer was a defendant before the drug treatment part of the County Court, Rockland County (hereinafter the Rockland County Drug Court). In connection with these separate proceedings, the plaintiffs both enrolled at the substance abuse treatment facility operated by the defendant Daytop Village, Inc. (hereinafter Daytop). The defendant Bendiner & Schlesinger, Inc. (hereinafter Bendiner) operates a testing laboratory which, pursuant to a contractual agreement with Daytop, performed testing on specimens Daytop collected from its clients, including the plaintiffs.

Oral fluid samples collected by Daytop from both plaintiffs were provided to Bendiner, which tested the samples. Both plaintiffs' samples yielded positive results for illicit substances.

Bendiner reported the results to Daytop, and Daytop requested confirmatory tests. Bendiner performed these confirmatory tests, which were also positive for the presence of illicit substances. Bendiner reported the results of the confirmatory tests to Daytop. Daytop, in turn, reported the positive test results to the Rockland County Family Treatment Court and the Rockland County Drug Court.

As a result of her positive test results, a violation petition was filed in the Family Court, Rockland County, against Braverman. Eventually, the petition was dismissed. However, according to the plaintiffs, the return of Braverman's children to her custody was delayed by approximately five months as a result of the test results reported by Bendiner to Daytop, and by Daytop to the court. As a result of her positive tests, Lohmeyer was terminated from the Rockland County Drug Court program, and was sentenced to one year of incarceration. She remained incarcerated for approximately five months, at which time her sentence was vacated.

The plaintiffs commenced this action against the defendants, alleging negligence. Among other things, the plaintiffs alleged that the defendants owed them a duty to label the test results with a disclaimer indicating that they were to be used for clinical purposes only, and were not valid for forensic purposes, apparently because they did not meet the applicable forensic standards with regard to the chain-of-custody and laboratory security. The plaintiffs further alleged that, by failing to label or otherwise disclose this information, the defendants breached that duty, causing the injuries sustained by them. The plaintiffs initially also asserted that the tests performed and reported by the defendants yielded false positive results, but they have abandoned those claims.

The defendants separately moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against each of them. The defendants each argued that they did not owe a duty to the plaintiffs to provide a label or disclaimer with the test results indicating that they were to be used for clinical purposes only. They also argued that, in any event, any negligence on their part was not a proximate cause of the plaintiffs' injuries, but merely furnished the condition or occasion therefor. They noted that the plaintiffs' test results were, in fact, positive. They also asserted that it was the responsibility of the plaintiffs' attorneys appearing before the courts in Rockland County to investigate the nature of the test results

and to object to their consideration as evidence by courts, and of the judges presiding over the proceedings to rule on either the admissibility or the probative value of the test results. According to the defendants, these circumstances broke the causal connection between any negligence on their part and the injuries sustained by the plaintiffs.

The plaintiffs opposed the defendants' separate motions. The plaintiffs asserted that, pursuant to this Court's opinion in *Landon*, the defendants owed them a duty to use reasonable care in testing their samples and reporting those test results. According to the plaintiffs, this duty included the duty to indicate that the test results furnished were for clinical purposes only, and were not valid for forensic use. The plaintiffs further asserted that the defendants' negligence was a proximate cause of their injuries.

The Supreme Court granted the defendants' separate motions, adhered to those determinations upon reargument, and entered judgment, in effect, in favor of the defendants and against the plaintiffs, dismissing the complaint. In the order appealed from, the court determined, as a matter of law, that any negligence on the part of the defendants was not the proximate cause of the plaintiffs' injuries.

"Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party" (*Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]; *see Darby v Compagnie Natl. Air France*, 96 NY2d 343, 347 [2001]; *Pulka v Edelman*, 40 NY2d 781, 782 [1976]). " 'Duty is essentially a legal term by which we express our conclusion that there can be liability' " (*Landon*, 91 AD3d at 82, quoting *De Angelis v Lutheran Med. Ctr.*, 58 NY2d 1053, 1055 [1983]). "[T]he existence and scope of a duty is a question of law requiring courts to balance sometimes competing public policy considerations" (*Espinal*, 98 NY2d at 138; *see e.g. Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 585-586 [1994]; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226-227 [1990]).

In this Court's opinion and order in *Landon*, we held that "a drug testing laboratory may be held liable in tort to the subject of a drug test for failing to use reasonable care under the circumstances, notwithstanding the absence of a formal contractual relationship between the drug testing laboratory and the subject of the drug test" (91 AD3d at 90). In arriving at our determination in *Landon*, this Court observed, in support of our conclu-

sion finding that a duty to the plaintiff existed, that the prospect of limitless liability was exceedingly small, as the duty alleged related to a narrow class of readily identifiable individuals (*id.* at 87). We also weighed the burden of imposing liability on defendants such as the defendant drug-testing laboratory against the societal benefits that would result from the imposition of such a duty (*id.* at 88). In doing so, we observed:

> "The importance attached to the results of drug tests can hardly be overstated. Indeed, the results of drug tests may form the basis for decisions affecting the very core of people's lives. A positive test may result in the loss of current employment, the forfeiture of retirement benefits and pension earned throughout the course of a lifetime of service, and the elimination of prospective employment opportunities. Moreover, a positive toxicology result may bear heavily on child custody decisions, or contribute to the complete termination of parental rights. Furthermore, as relevant here, an individual may be locked in a prison or otherwise deprived of the fundamental right to freedom as a consequence of the results of a single drug test. In sum, we cannot help recognizing that a positive toxicology result may have far-reaching, permanent, and devastating effects on, among other things, an individual's livelihood, family life, and liberty" (*id.* at 88-89 [citations omitted]).

We concluded that, "[g]iven the importance drug testing holds in the management of modern affairs and the costs that inaccuracies may exact on society, it is paramount that incentives exist to minimize the risk of erroneous test results," but noted both that there were no legislative remedies extended to test subjects who found themselves victims of negligent drug testing, and that, under current circumstances, market forces were insufficient to provide adequate incentives (*id.* at 89).

On October 10, 2013, a majority of the Court of Appeals affirmed this Court's decision and order in *Landon* (22 NY3d 1 [2013], *affg* 91 AD3d 79 [2011]). The majority in the Court of Appeals determined "that [the drug-testing laboratory] had a duty to the test subject to perform his drug test in keeping with relevant professional standards and that the existence of its contract with the County does not immunize defendant laboratory" (*id.* at 6-7). The majority in the Court of Appeals relied on

*Espinal* for the proposition that, under certain, specified circumstances, where two parties are in a contractual relationship, a duty of care running to third parties outside of the contract may be assumed (*Landon*, 22 NY3d at 6). The majority expressly referred to the *Espinal* exception where a party to the contract may assume a duty of care to a third party " 'where the contracting party, in failing to exercise reasonable care in the performance of [its] duties, launche[s] a force or instrument of harm' " (*id.*, quoting *Espinal*, 98 NY2d at 140). As we did in our opinion in *Landon*, the majority in the Court of Appeals further relied on "strong policy-based considerations" that weighed in favor of finding that the drug-testing laboratory owed a duty of care to the plaintiff under the circumstances of the case, including the "potentially life-altering[ ] consequences" a false positive test result may have for the test subject (*Landon*, 22 NY3d at 6). The majority in the Court of Appeals also noted that its determination was consistent with those of several other jurisdictions recognizing a duty of care in similar circumstances (*see id.*).

Bendiner claims that the plaintiffs here seek to create a new duty—the specific duty to label test results with a disclaimer indicating, where appropriate, that test results are valid for clinical purposes only and are not for forensic use. I disagree with this characterization of the plaintiffs' position and this characterization of the circumstances of this case. Rather, as to Bendiner, I interpret the breach alleged here—the failure to include such a warning—as a breach of the duty "to use reasonable care under the circumstances" set forth in *Landon* (*Landon*, 91 AD3d at 90), which I deem to include the duty to use reasonable care in performing the drug testing and in reporting the results. Thus, as the plaintiffs assert, under *Landon*, Bendiner owed the plaintiffs, as test subjects, a duty to exercise reasonable care in performing its drug testing, including the reporting of the test results. Indeed, Bendiner expressly acknowledges its duty to accurately report test results as well as its duty to accurately analyze the specimens. In my opinion, this is not the announcement or creation of a new duty. Rather, I deem the plaintiffs' allegations to constitute a breach of the very duty described in *Landon*.

Furthermore, for the same reasons justifying the imposition of that duty on the drug-testing laboratory in *Landon*, and on Bendiner here, I conclude that, under the circumstances of this case, Daytop owed the same duty to the plaintiffs. Obviously, li-

ability in tort does not depend upon the existence of a contractual agreement. Daytop undertook to report its clients' test results to the drug treatment courts in Rockland County. The considerations that gave rise in *Landon* to our determination that a drug-testing laboratory such as Bendiner owes the test subject a duty of reasonable care are applicable as well to Daytop, the substance abuse treatment facility in which the plaintiffs enrolled in connection with their proceedings before the drug treatment courts in Rockland County, and which undertook to report its clients' test results to those courts. For the reasons expansively set forth in our opinion in *Landon*, I conclude that, in undertaking this role, Daytop owed those clients a duty to use reasonable care in reporting the test results to the courts. Indeed, there is no basis to conclude that the substance abuse treatment center, which had agreements with the plaintiffs as its clients, should not have a duty to accurately report those clients' test results where Bendiner, which had no direct relationship with the clients, did have such a duty.

Accordingly, I conclude that both Bendiner and Daytop owed the plaintiffs a duty to exercise reasonable care in the analysis of their samples and the reporting of the test results. Again, I deem this to be the very duty set forth in *Landon*, not the announcement of a new duty or, as the majority here characterizes it, an expansion of the duty described in *Landon*.

Furthermore, I disagree with the majority's characterization of the defendants' conduct here as a mere "negligent omission" and "denial of a benefit," as opposed to the actual "commission of a wrong" (*Moch Co. v Rensselaer Water Co.*, 247 NY 160, 169 [1928]). In my estimation, the circumstances here are not analogous to the failure of a defendant "to make conditions safer for the injured party" (*Church v Callanan Indus.*, 99 NY2d 104, 112 [2002]), or to a defendant's omission to warn or take certain action which omissions did not create or increase a risk of harm (*see e.g. Bono v Halben's Tire City, Inc.*, 84 AD3d 1137, 1140 [2011]). In such cases, the defendant's actions, or failure to act, amount to no more than the failure to become an instrument of good. Here, however, in my view, the defendants' failure to properly label test results that they actively produced and affirmatively reported to the drug treatment courts in Rockland County, under the circumstances of this case, amounted to the " 'launch[ing] [of] a force or instrument of harm' " (*Espinal*, 98 NY2d at 140, quoting *Moch Co. v Rensselaer Water Co.*, 247 NY at 168).

Turning to the element of breach, the plaintiffs allege that Bendiner breached this duty by reporting positive test results without a disclaimer that the results were valid for clinical purposes only and were not valid for forensic use. They further claim that Daytop breached its duty by reporting these test results to the drug treatment courts in Rockland County without such a disclaimer.

Both Bendiner and Daytop knew or should have known that the procedures involved in arriving at the test results from oral samples did not adhere to the requirements applicable for forensic testing and, therefore, were valid for clinical purposes only. One section of the contract between Bendiner and Daytop pertained to oral fluid testing only, including testing using the Intercept oral fluid collection kit at issue here. This section of the contract says nothing of forensic chain-of-custody testing, while a subsequent section of the contract expressly pertains to "FORENSIC CHAIN OF CUSTODY TESTING." This later section of the contract expressly addresses the testing of urine specimens only, and makes no reference to oral fluid testing. Moreover, among Bendiner's many arguments, it asserts that it should have no duty to label test results on oral fluid samples as being for clinical purposes only since it contracted to perform only clinical testing on oral fluid samples in the first instance.

Based on the foregoing, Bendiner and Daytop knew or should have known that the oral fluid test results were derived from procedures applicable to clinical testing only, and did not meet the standards for forensic testing. Additionally, the defendants knew or should have known that the test results that they produced and reported would be considered as evidence in court proceedings. Daytop cannot reasonably deny this, as it is the entity which reported test results to the drug treatment courts in Rockland County. With regard to Bendiner, as the plaintiffs emphasize, Dr. William Closson, Bendiner's Director of Laboratories, testified at his deposition that he had testified in courts in Rockland County regarding oral fluid samples on more than one occasion. Accordingly, the possibility that the test results could be used in court was foreseeable to the defendants.

Based on the foregoing, I conclude that, knowing that the oral fluid test results did not meet forensic standards, and having actual or constructive knowledge that they could be used in court proceedings, Bendiner and Daytop, in failing to properly label the results, breached their duty to exercise reasonable care in analyzing oral fluid samples and reporting the test results.

Under the circumstances of this case, it was unreasonable and a breach of the duty owed to the plaintiffs for the defendants to fail to indicate that the test results were not valid for forensic purposes, and were only for clinical use. I note, also, in this regard, that the burden on the defendants to have done so would have been absolutely minimal.

Although it is my opinion that the defendants owed the plaintiffs a duty of care, and that they breached that duty, I nevertheless conclude that the Supreme Court properly granted those branches of the defendants' separate motions which were for summary judgment dismissing the complaint insofar as asserted against each of them, based on the absence of proximate cause.

"[T]he concept of proximate cause, or more appropriately legal cause, has proven to be an elusive one, incapable of being precisely defined to cover all situations" (*Lapidus v State of New York*, 57 AD3d 83, 94 [2008], quoting *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 314 [1980]). "This is so, in part, because the concept of proximate cause stems from 'policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct' " (*Lapidus v State of New York*, 57 AD3d at 94, quoting *Derdiarian v Felix Contr. Corp.*, 51 NY2d at 314).

"Generally, it is for the trier of fact to determine the issue of proximate cause" (*Kalland v Hungry Harbor Assoc., LLC*, 84 AD3d 889, 889 [2011]; *see Howard v Poseidon Pools*, 72 NY2d 972, 974 [1988]; *Scala v Scala*, 31 AD3d 423, 424 [2006]). "However, the issue of proximate cause may be decided as a matter of law where only one conclusion may be drawn from the established facts" (*Kalland v Hungry Harbor Assoc., LLC*, 84 AD3d at 889; *see Howard v Poseidon Pools*, 72 NY2d at 974; *Scala v Scala*, 31 AD3d at 424). "Additionally, there may be more than one proximate cause" of a plaintiff's injuries (*Kalland v Hungry Harbor Assoc., LLC*, 84 AD3d at 889; *see Gestetner v Teitelbaum*, 52 AD3d 778, 778 [2008]; *Scala v Scala*, 31 AD3d at 424-425; *Hyde v Long Is. R.R. Co.*, 277 AD2d 425, 426 [2000]). To sustain the burden of proving a prima facie case of proximate cause, "the plaintiff in a negligence action 'must generally show that the defendant's negligence was a substantial cause of the events which produced the injury' " (*Lapidus v State of New York*, 57 AD3d at 94, quoting *Derdiarian v Felix Contr. Corp.*, 51 NY2d at 315).

"Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury,

the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence. If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d at 315 [citations omitted]).

In addition, a party may not be held liable where that party's acts merely furnished the condition or occasion for the occurrence of the event causing the plaintiff's injuries but are not one of its causes (*see Akinola v Palmer*, 98 AD3d 928, 929 [2012]; *Papadakis v HM Kelly, Inc.*, 97 AD3d 731, 732 [2012]; *Christ the King Regional High School v Zurich Ins. Co. of N. Am.*, 91 AD3d 806, 809 [2012]; *Pritchard v Suburban Carting Corp.*, 90 AD3d 729, 732 [2011]; *Castillo v Amjack Leasing Corp.*, 84 AD3d 1298, 1298 [2011]; *Iqbal v Thai*, 83 AD3d 897, 898 [2011]).

This is a highly unusual case, and the case law pertaining to common-law negligence is of limited precedential value in this context. In any event, I conclude that the evidence submitted by the defendants in support of their separate motions demonstrated, prima facie, that, under the circumstances of this case, their alleged breaches did not proximately cause the damages sustained by the plaintiffs (*see generally Derdiarian v Felix Contr. Co.*, 51 NY2d at 315). The failure of the plaintiffs' attorneys to investigate the nature of the test results and to object to their consideration by the drug treatment courts, and those courts' determinations to credit the probative value of the results of those drug tests, were independent acts far removed from the alleged negligence of the defendants in failing to label the test results. Accordingly, I conclude that the acts of the attorneys and the judges were superseding acts, breaking the causal nexus (*see Derdiarian v Felix Contr. Corp.*, 51 NY2d at 315). Under the circumstances of this case, any negligence on the part of the defendants merely furnished the condition or occasion for the plaintiffs' injuries, rather than being one of the causes thereof (*see generally Akinola v Palmer*, 98 AD3d 929; *Papadakis v HM Kelly, Inc.*, 97 AD3d at 732; *Christ the King Regional High School v Zurich Ins. Co. of N. Am.*, 91 AD3d

809 [2012]; *Pritchard v Suburban Carting Corp.*, 90 AD3d at 732; *Castillo v Amjack Leasing Corp.*, 84 AD3d 1298; *Iqbal v Thai*, 83 AD3d at 898). Moreover, as the defendants emphasize, the injuries sustained by the plaintiffs were caused, in no small measure, by the plaintiffs' own conduct.

I acknowledge the possibility, raised by the majority, that the duty at issue here may prove to be, in a sense and in certain circumstances, illusory. However, in my view, the mere fact that future plaintiffs may face formidable challenges in establishing proximate cause in circumstances such as those at issue here, and, indeed, in many cases may not be able to do so, is no basis to conclude that the existence of a duty is absent in the first instance.

In opposition to the defendants' separate prima facie showings, the plaintiffs failed to raise a triable issue of fact (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Thus, in the absence of proximate cause, the Supreme Court properly granted those branches of the defendants' separate motions which were for summary judgment dismissing the complaint insofar as asserted against each of them.

Accordingly, based on all of the foregoing, I would affirm the judgment appealed from. However, unlike the majority, I would do so on the ground that, while the defendants owed the plaintiffs a duty, and both defendants breached that duty, the defendants' acts constituting that breach were not a proximate cause of the injuries suffered by the plaintiffs.

RIVERA, J.P., and ROMAN, J., concur with SKELOS, J.; DICKERSON and LOTT, JJ., concur in the result, vote to dismiss the appeal from the order dated December 5, 2011, and affirm the judgment in a separate opinion by DICKERSON, J.

Ordered that the appeal from the order dated December 5, 2011, is dismissed; and it is further, ordered that the judgment is affirmed; and it is further, ordered that one bill of costs is awarded to the defendants.