IN RE: FUNDAMENTAL LONG
TERM CARE, INC., Debtor.

Beth Ann Scharrer, as Chapter 7 Trustee, and Trans Health Management, Inc., Plaintiffs,

v.

Troutman Sanders, LLP,
et al., Defendants.

Case No. 8:11–bk–22258–MGW
Adv. No. 8:14–ap–00486–MGW

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Signed December 8, 2015

Dennis P. Waggoner, J. Logan Murphy, Hill, Ward & Henderson, P.A., Counsel for Troutman Sanders LLP and Lawrence Levinson

Steven M. Berman, Seth P. Traub, Shumaker, Loop & Kendrick, LLP, Counsel for Chapter 7 Trustee and Trans Health Management, Inc.

*MEMORANDUM OPINION AND ORDER ON MOTION S TO DISMISS*

Michael G. Williamson, Chief United States Bankruptcy Judge

The sole claim directly against the Debtor in this bankruptcy case is a $110 million default judgment based on an allegation that the Debtor received a nursing home management company's assets for less than reasonably equivalent value. But the Trustee's claims in this proceeding against Troutman Sanders—for negligence and fraud—require the Trustee to prove that (1) the Debtor would have successfully defended the fraudulent transfer claim against the Debtor; or (2) the Debtor did not actually receive the management company's assets. It would make a mockery of the legal system to permit the Trustee to pursue claims against Troutman Sanders for the benefit of the judgment creditor where those claims would require the Trustee to prove the judgment never should have been entered in the first place.

It is true the Trustee has also asserted negligence and fraud claims against Troutman Sanders in this proceeding on behalf of the Debtor's subsidiary. Those claims require the Trustee to prove Troutman Sanders failed to disclose certain facts to the Debtor's subsidiary about a transaction it was a part of. But the Trustee fails to allege that Troutman Sanders owed any duty to the Debtor's subsidiary. After all, Troutman Sanders, a national law firm, never represented the Debtor's subsidiary. Nor do the facts alleged in the complaint

give rise to any other duty to speak. Accordingly, the Trustee's complaint should be dismissed in its entirety.

**Background [1]**

According to the Trustee, Troutman Sanders is at the center of an elaborate bust-out scheme that allowed one of its partners and a company he owned to acquire a nursing home chain and its management company without acquiring the management company's significant liabilities. As of March 2006, THI Holdings owned Trans Healthcare, Inc. ("THI") and THI of Baltimore, Inc. ("THI–B").[2] Both THI and THI–B operated nursing homes.[3] Trans Health Management, Inc. ("THMI"), a THI subsidiary, managed the nursing homes that THI and THI–B operated.[4] At the time, THMI was facing more than 150 lawsuits for negligence, fraud, conversion, and other claims.[5] Leonard Grunstein (a Troutman Sanders partner) and Murray Forman (an investment banker) wanted to acquire the nursing homes THI–B operated, and they needed THMI to manage those homes, but they did not want to acquire THMI's liabilities.

So Forman and Grunstein allegedly devised a plan to acquire THMI's assets without its liabilities. First, they retained Troutman Sanders to incorporate Fundamental Long Term Care Holdings, LLC ("FLTCH") to acquire all of the stock in THI–B as part of a stock sale agreement.[6] Next, they directed Troutman Sanders to incorporate the Debtor, which was a sham entity, to acquire all of the stock in THMI

---

1. The factual background in this Memorandum Opinion is taken from the facts alleged in the Trustee's complaint, which this Court must accept as true. Troutman Sanders has also requested the Court take judicial notice of certain public records. Adv. Doc. No. 39.

2. Adv. Doc. No. 1 at ¶¶ 12 & 14–16.

3. *Id.* at ¶¶ 12 & 16–18.

4. *Id.* at ¶¶ 13 & 27–30.

5. *Id.* at ¶¶ 31–40.

6. *Id.* at ¶¶ 18, 27 & 59.

as part of a second stock sale agreement that would close simultaneously with the THI–B stock sale.[7] Forman and Grunstein then gave ownership of the Debtor to Barry Saacks, an elderly gentleman living in a basement in Brooklyn, New York, who had no idea he owned THMI, much less that it would be acquiring THMI's stock.[8] Third, after the THI–B and THMI stock sales closed, Forman and Grunstein transferred THMI's assets—mostly employees and computer equipment—to another entity they owned.[9]

According to the Trustee, Troutman Sanders' fingerprints were all over the stock sale agreements that were at the heart of this "bust out" scheme. In particular, the Trustee alleges that Troutman Sanders, among other things, formed the Debtor to acquire THMI; conducted the due diligence for the THMI stock sale; negotiated and drafted the stock purchase agreements for both stock sales; prepared the closing documents for both sales; collected all of the required signatures; and conducted a virtual closing of both sales.[10] All of this—including the actions taken on behalf of the Debtor—was done at the direction of Forman and Grunstein.[11] But despite the fact that it conducted due diligence and negotiated and drafted the sale documents for the THMI transaction, Troutman Sanders insists that the Debtor was not its client, and nobody from the firm (other than perhaps Grunstein) ever spoke with Saacks about the transaction, let alone explained the terms of the transaction to him or advised him that the firm was not representing him or the Debtor.[12]

Four years after the sale closed, one of the 150 or so lawsuits against THMI—a negligence claim by the Jackson Estate—resulted in a $110 million judgment. But that judgment against THMI went unsatisfied. The Jackson Estate contends it was unable to collect on its judgment because all of THMI's assets had been looted from the company as part of the March 2006 linked stock sales, which the Jackson Estate discovered sometime after it obtained its $110 million judgment. So the Jackson Estate initiated proceedings supplementary against the Debtor and others.

In its motion for proceedings supplementary, the Jackson Estate alleged the Debtor should be liable for the judgment against THMI because the Debtor was the transferee of THMI's assets. The motion for proceedings supplementary specifically references the THI–B and THMI stock sale transactions and alleges those transactions were a fraudulent attempt by a number of entities to thwart the Jackson Estate's collection efforts. According to the Trustee, the motion for proceedings supplementary was served on CT Corporation (the Debtor's registered agent), which in turn gave notice to Troutman Sanders. Troutman Sanders, however, apparently did nothing with motion, and as a consequence, the state court entered a default judgment against the Debtor for $110 million.

The Jackson Estate then forced the Debtor into an involuntary chapter 7 case, and the Trustee filed this adversary proceeding to collect on the $110 million fraudulent transfer judgment against the Debtor. The Trustee's adversary complaint asserts claims—on behalf of both the Debtor and THMI—against Troutman

---

**7.** *Id.* at ¶¶ 46–58.

**8.** *Id.* at ¶¶ 81–89.

**9.** *Id.* at ¶¶ 199.

**10.** *Id.* at ¶¶ 104 & 106.

**11.** *Id.* at ¶¶ 105 & 108.

**12.** *Id.* at ¶¶ 109–112.

Sanders, Grunstein, and Lawrence Levinson (another Troutman Sanders partner) for negligence (Counts I and II); fraudulent concealment (Count III), fraud (Count IV), and negligent supervision (Count V).[13] The various counts are somewhat convoluted and, at times, can be difficult to decipher.

As best the Court can tell, the Trustee's negligence counts are based on two distinct theories that can be roughly summarized as follows: (i) Troutman Sanders and Levinson received notice of the proceedings supplementary against the Debtor but failed to protect the Debtor's interests by defending—or at least notifying the Debtor of—the proceedings supplementary (Count I); and (ii) Troutman Sanders failed to advise the Debtor or THMI that the two stock sales were really an effort to loot THMI's assets and leave THMI a liability-ridden shell (Count II). The Trustee's fraud claims (Counts III and IV) are largely the same as her negligence claim in Count II. And her negligent supervision claim basically alleges Troutman Sanders failed to prevent Grunstein from orchestrating the "bust out" scheme (Count V). In short, the Trustee's complaint hinges on the central allegation that Troutman Sanders (actively or passively) participated in a scheme that resulted in THMI's assets being looted by FLTCH, Forman, and Grunstein.

Troutman Sanders, Grunstein, and Levinson have moved to dismiss the Trustee's complaint on a variety of grounds.[14] Most of those are pleading defects. For one, Troutman Sanders says the complaint is a shotgun pleading because it incorporates all 162 introductory allegations into each count.[15] For another, Troutman Sanders says the Trustee's negligence claims are really claims for legal malpractice, which must be dismissed because the Trustee cannot allege the Debtor or THMI were in privity with the firm.[16] And even if they were really claims for negligence, Troutman Sanders says the Trustee does not— nor can she—allege the firm owed a duty to either the Debtor or THMI.[17] As for the fraud counts, Troutman Sanders says they are duplicative of the negligence claim and must be dismissed because the Trustee has not alleged justifiable reliance.[18] Aside from the pleading defects, Troutman Sanders raises an equitable ground for dismissal: judicial estoppel.[19]

Relying on the Seventh Circuit Court of Appeals decision in *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, Troutman Sanders argues the Trustee is judicially estopped from asserting her claims here— at least on behalf of the Debtor—because she would be required to take a position contrary to the one taken by the Jackson

---

**13.** Adv. Doc. No. 1. THMI is the Debtor's wholly owned subsidiary. This Court initially permitted the Trustee, who is essentially the shareholder of THMI's corporate parent, to assert claims on THMI's behalf since she was the only person around to act on THMI's behalf. After the Debtor acquired THMI's stock, the company was administratively dissolved. And as of the filing of this bankruptcy case, THMI had no officers and directors. Since the Trustee filed this proceeding, this Court has substantively consolidated the Debtor and THMI. So the Trustee has standing to pursue claims on THMI's behalf.

**14.** Adv. Doc. Nos. 38 & 40. Grunstein recently entered into a settlement agreement with the Trustee (and others) that resolved all of the Trustee's claims against him, including the claims asserted in this proceeding.

**15.** Adv. Doc. No. 38 at 9.

**16.** *Id.* at 17–18.

**17.** *Id.* at 15–16.

**18.** *Id.* at 19–23.

**19.** *Id.* at 5–8.

Estate in the proceedings supplementary.[20] The Jackson Estate obtained a $110 million judgment against the Debtor by alleging it received THMI's assets as part of a fraudulent transfer. But in order for the Trustee to prevail on any of her claims here, she would have to show that the Debtor did not receive THMI's assets as part of the March 2006 stock sale. Troutman Sanders says the Trustee cannot collect on the judgment against the Debtor by essentially claiming it never should have been entered in the first place.

### Conclusions of Law

Ordinarily, the Court dispenses with the standard for pleading claims for relief under Rule 8 since it is generally well known by litigants and courts alike. But, in reviewing the Trustee's complaint here, it appears the standard is worth repeating. Under Rule 8, a plaintiff is only required to plead a "short and plain statement of the claim showing that the pleader is entitled to relief." [21] To satisfy that standard, the Trustee does not need to plead detailed factual allegations.[22] Instead, she only needs to allege enough facts to state a claim for relief that is plausible on its face.[23] While it is true that more complex cases require more fact pleading,[24] the Trustee, in pleading 25 pages of background and another 17 pages of claims for relief, has gone far beyond what is required under Rule 8.

■■■ Of course, verbosity alone is not grounds for dismissal.[25] Excessive length typically warrants dismissal only where the complaint is "so verbose, confused and redundant that its true substance, if any, is well disguised." [26] In those cases where complaints are "windy but understandable," the "[s]urplusage can and should be ignored." [27] Here, the complaint contains more than its fair share of surplusage.

Throughout the general allegations, for instance, the Trustee introduces at least ten actors who, if this were a movie, would merit mention only as "extras" in the film's credits. There is Edgar Jannotta, Jr., who along with Anthony Misitano, formed THI nearly a decade before the transactions at issue;[28] GTCR Golder Rauner and GTCR Fund VI, which apparently owned (in some fashion) THI Holdings;[29] Uri Kaufman, who owned ABE Briarwood Corp., which, in turn, owned the nursing homes that

---

**20.** *Id.* at 1–2 & 5–8.

**21.** Fed.R.Civ.P. 8 (providing that a "pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief"). Federal Rule of Bankruptcy Procedure 7008, which is applicable to this adversary proceeding, incorporates Rule 8.

**22.** *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**23.** *Id.* at 555–56, 127 S.Ct. 1955.

**24.** *Robbins v. Oklahoma ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1246 (10th Cir. 2008); *Phillips v. Cty of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008); *Limestone Dev. Corp. v. Village of Lemont,* 520 F.3d 797, 803 (7th Cir.2008).

**25.** *See, e.g., Wynder v. McMahon,* 360 F.3d 73, 79–80 (2d Cir.2004); *United States v. Lockheed–Martin Corp.,* 328 F.3d 374, 378 (7th Cir.2003); *Davis v. Ruby Foods, Inc.,* 269 F.3d 818, 820 (7th Cir.2001); *but see In re Westinghouse Sec. Litig.,* 90 F.3d 696, 702–03 (3d Cir.1996); *Kuehl v. FDIC,* 8 F.3d 905, 908–09 (1st Cir.1993); *Michaelis v. Nebraska State Bar Ass'n,* 717 F.2d 437, 439 (8th Cir. 1983).

**26.** *Hearns v. San Bernardino Police Dep't,* 530 F.3d 1124, 1131 (9th Cir.2008).

**27.** *Lockheed–Martin,* 328 F.3d at 378.

**28.** Adv. Doc. No. 1 at ¶ 12.

**29.** *Id.* at ¶¶ 12 & 13.

THI–B leased or subleased;[30] SWC Property, which took assignment of some of Briarwood's leases;[31] Rubin Schron, who financed Briarwood and owned SWC;[32] and MetCap Holdings, which wholly owned MetCap Securities, which was formed by Forman so he could provide his investment banking services.[33] After brief cameo appearances in the "opening scenes" of the complaint, none of those individuals or entities reappear in the action sequences (i.e., the claims for relief).

Then there are the numerous allegations that are wholly irrelevant to the Trustee's claims. Some examples: Forman provided investment banking services to Schron;[34] Grunstein and Troutman Sanders provided legal services to Schron and his entities;[35] Forman and Grunstein received professional fees and an 8% equity interest in an entity owned by Schron as compensation for their services;[36] and Schron admitted he was a beneficial owner of FLTCH.[37] After reading all of the allegations regarding Schron, the Court could be forgiven for thinking he is a party. But he is not. The point is that the Trustee's pleading practices make it difficult to discern the basis of her claims by "scattering and concealing in a morass of irrelevancies the few allegations that matter."[38]

To take but one example, Troutman Sanders says the Court must dismiss Count I because the Trustee fails to allege cause-in-fact causation. Specifically, Troutman Sanders says the Trustee never alleges that the Debtor would have defended the proceedings supplementary had it known about them. At the motion to dismiss hearing, however, the Trustee's counsel says Abe Backenroth represented "he would have absolutely defended Mr. Saacks' company if he knew that [the Debtor] was being attacked or litigation was being waged against it."[39] Perhaps that would be sufficient to allege cause-in-fact causation. But those facts are not anywhere in the complaint. While Mr. Jannotta, Mr. Misitano, Mr. Schron, and others all make cameo appearances in the complaint, the one person who can apparently establish that Troutman Sanders' alleged negligence was the cause-in-fact of the Debtor's damages—Abe Backenroth—ended up on the cutting room floor.

The Court, however, need not dismiss the Trustee's complaint on Rule 8 grounds. When possible, the Court should not rely on technical pleading defects. In the words of Circuit Court Judge Frank Easterbrook: "Instead of insisting that the parties perfect their pleadings, a judge should bypass the dross and get on with the case."[40] While the Trustee's pleading deficiencies do not warrant dismissal, two more substantive defects doom the Trustee's claims.

*The Trustee is judicially estopped from asserting claims on the Debtor's behalf.*

■ As the Supreme Court recognized in *New Hampshire v. Maine*, the

---

30. *Id.* at ¶¶ 16–18.

31. *Id.* at ¶ 19.

32. *Id.* at ¶¶ 17 & 19.

33. *Id.* at ¶ 22.

34. *Id.* at ¶ 23.

35. *Id.* at ¶ 24.

36. *Id.* at ¶¶ 25 & 26.

37. *Id.* at ¶ 43.

38. *United States v. Lockheed–Martin Corp.,* 328 F.3d 374, 378 (7th Cir.2003).

39. Adv. Doc. No. 50 at p. 33, l. 19–25.

40. *Lockheed–Martin,* 328 F.3d at 378.

purpose of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."[41] While acknowledging that the circumstances under which judicial estoppel applies "are not reducible to any general formulation," the Supreme Court did observe that courts have generally considered whether (i) the present position is clearly inconsistent with the earlier position; (ii) the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was misled and; (iii) the party advancing the inconsistent position would derive an unfair advantage.[42]

The Eleventh Circuit, consistent with the factors identified by the Supreme Court, has developed its own two-factor test for when judicial estoppel applies:

First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.[43]

Whether it applies the two-factor test enunciated by the Eleventh Circuit or considers the three factors enumerated by the Supreme Court, this Court must "always give due consideration to all of the circumstances of a particular case" in deciding whether the doctrine of judicial estoppel applies.[44]

Here, all three factors enumerated by the Supreme Court weigh in favor of judicially estopping the Trustee from pursuing her claims. The Trustee's present position (i.e., the Debtor did not receive THMI's assets) is plainly inconsistent with the Jackson Estate's earlier position (i.e., the Debtor received THMI's assets for less than reasonably equivalent value); the Jackson Estate was successful in convincing the state court that the Debtor received THMI's assets; and the Trustee would seem to gain an unfair advantage by being permitted to assert an inconsistent position to establish the central elements of her claims against Troutman Sanders. There is only one fact that keeps this case from falling neatly within the Supreme Court's three enumerated factors: the Trustee is not the party that advanced the earlier inconsistent position—the Jackson Estate was.

But that was precisely the argument that was considered (as a matter of first impression) and rejected by the Seventh Circuit in *Grochocinski*.[45] There, like here, the trustee sued the debtor's former law firm for negligence that led to a default judgment against the debtor, which was later forced into an involuntary bankruptcy by the judgment creditor.[46] The debtor's law firm defended the negligence claim by arguing that the trustee could not collect on a judgment by proving it should never have been entered in the first place.[47] The trial court granted summary judgment in favor of the law firm based on judicial estoppel—even though the trustee was not involved in obtaining the default judgment—because "judicial estoppel is

---

**41.** 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

**42.** *Id.* at 750, 121 S.Ct. 1808.

**43.** *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir.2002).

**44.** *Id.* at 1285–86.

**45.** *Grochocinski v. Mayer Brown Rowe & Maw, LLP (In re Grochocinski)*, 719 F.3d 785, 795–96 (7th Cir.2013).

**46.** *Id.* at 788.

**47.** *Id.* at 793–94.

'concerned solely with protecting the integrity of the courts, not the relationship between the parties to the prior litigation,'" and in any case, the trustee had essentially acted as the judgment creditor's proxy in the bankruptcy case (and malpractice action).[48] On appeal, the Seventh Circuit affirmed entry of summary judgment on judicial estoppel grounds.

In doing so, the Seventh Circuit held that the trial court did not abuse its discretion in concluding that unusual circumstances made it equitable to attribute the judgment creditor's earlier positions to the trustee.[49] Of particular significance was the fact that the judgment creditor was instrumental in orchestrating the involuntary bankruptcy case and malpractice action.[50] The trial court also thought it was important that the judgment creditor would receive the lion's share of any recovery in the malpractice action.[51] The Seventh Circuit agreed that, given the judgment creditor's role in orchestrating the involuntary bankruptcy and the malpractice action, the courts would have been abused and misled if the trustee prevailed on the malpractice action and if the judgment creditor received the lion's share of the recovery.[52]

The facts here are virtually identical to those in *Grochocinski*. Here, like the judgment creditor in *Grochocinski*, the Jackson Estate obtained a default judgment against the Debtor.[53] That judgment, for $110 million, was based on the allegation that the Debtor received THMI's assets for less than reasonably equivalent value. After obtaining the default judgment, the Jackson Estate, also like the judgment creditor in *Grochocinski*, forced the Debtor into an involuntary bankruptcy case. The Court acknowledges the record here does not demonstrate the Jackson Estate was as insistent that the Trustee bring the malpractice claim as the creditor in *Grochocinski* was. But there can be no serious question the Jackson Estate has encouraged the Trustee to bring this claim. And there likewise is no serious question the Jackson Estate will receive the lion's share of the recovery. The Court cannot see how this case is distinguishable from *Grochocinski*, which this Court finds well reasoned and persuasive.[54]

In the end, the Court is troubled by the fact that the Trustee is attempting to collect and pay out on a judgment by proving it never should have been entered in the first place. As the Supreme Court has recognized, the doctrine of judicial estoppel is intended "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."[55] Here, the Trustee is deliberately taking a position different from than the one taken by the Jackson Estate based on the exigencies of the moment. It would surely make a mockery of the system to allow the Trustee to collect on the $110

---

48. *Id.* at 794.

49. *Id.* at 796–97.

50. *Id.* at 796.

51. *Id.*

52. *Id.* at 797.

53. Adv. Doc. No. 1 at ¶¶ 152–158.

54. At the motion to dismiss hearing, counsel for the Trustee and Jackson Estate both attempted to argue the cases were distinguishable. But neither could articulate a single meaningful fact that distinguished the cases.

55. *New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

million judgment against the Debtor by proving it should have never been entered in the first place, and so for that reason, the Court concludes the Trustee is judicially estopped from asserting her negligence claims in Count I.

Judicial estoppel also bars the Trustee's other claims on the Debtor's behalf (Counts II–V). Counts II, III, and IV are all premised on the central allegation that THMI's assets were looted from the company before or after the Debtor acquired it. And Count V is premised on the allegation that Troutman Sanders allowed Grunstein to loot THMI's assets. But those claims, like the negligence claim in Count I, are being pursued to pay a judgment against the Debtor premised on the allegation that the Debtor did, in fact, get THMI's assets. So allowing the Trustee to pursue those claims would also make a mockery of the system.

■ Judicial estoppel, however, does not preclude any separate claims the Trustee is pursuing on THMI's behalf. This Court has substantively consolidated THMI into this bankruptcy estate. So the Trustee is authorized to pursue claims on THMI's behalf. It appears Counts II through V have been asserted on THMI's behalf (as well as the Debtor's behalf). To the extent Counts II through V are asserted on THMI's behalf, however, they must also be dismissed for another reason.

*The Trustee cannot allege the required duty to state negligence and fraud claims on THMI's behalf.*

■ There is no question the Trustee must prove that Troutman Sanders owed THMI a duty to state a claim for negligence, fraudulent concealment, and fraud here. It is axiomatic that "duty" is one of the four elements of a negligence claim.[56] And so it is with a fraudulent concealment claim; the Trustee must allege Troutman Sanders owed a duty to disclose certain facts to THMI.[57] Since the Trustee's fraud claim is the same as her fraudulent concealment claim, she must likewise allege a duty to state a claim for fraud. The problem is the Trustee has not plausibly alleged that Troutman Sanders owed any duty to THMI.

To see how that is the case, compare the Trustee's allegations regarding the duty Troutman Sanders allegedly owed to the Debtor with the alleged duty the firm owed to THMI. In Count II (for negligence), the Trustee alleges Troutman Sanders owed the Debtor a duty to (1) disclose that a third party (FLTCH) was directing the firm's decision-making; (2) disclose that Grunstein's financial interest in FLTCH created a conflict of interest; (3) explain the stock sale transactions so that the Debtor could make an informed decision about it; and (4) disclose that Grunstein was allocating THMI's assets and liabilities (i.e., looting THMI's assets)

---

**56.** *Braverman v. Bendiner & Schlesinger, Inc.,* 121 A.D.3d 353, 990 N.Y.S.2d 605 (2014) (explaining "[it] is axiomatic that the breach of a duty owed by a defendant to a plaintiff is essential to a recovery in a negligence action"); *Chahales v. Westchester Joint Water Works,* 47 A.D.3d 610, 850 N.Y.S.2d 145, 146 (2008); *Gayle v. Nat'l R.R. Passenger Corp.,* 2010 WL 769725, at *7 (S.D.N.Y. Mar. 8, 2010) (explaining that "[b]ecause a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is

whether the alleged tortfeasor owed a duty of care to the injured party").

**57.** *Sarafianos v. Shandong Tada Auto–Parking Co.,* 2015 WL 2198499, at *3 (S.D.N.Y. May 8, 2015) (explaining that a "claim for fraudulent concealment or omission requires the same allegations as a fraudulent misrepresentation claim, along with 'an allegation that the defendant had a duty to disclose material information and that it failed to do so' ").

for his own benefit.[58]   In Count III (fraudulent concealment), the Trustee alleges Troutman Sanders owed a duty to explain the THMI stock sale to the Debtor, which was acquiring THMI.[59] The Trustee is fairly specific regarding the duties Troutman Sanders allegedly owed the Debtor.

Just the opposite is the case, however, when it comes to the alleged duty the firm owed to THMI. Despite 259 numbered paragraphs, the complaint contains only three allegations referencing any duty Troutman Sanders allegedly owed THMI.[60] And one of the allegations references a duty Grunstein supposedly breached without specifying what the duty was.[61] So there are really only two allegations that reference a duty.  As a general matter, the stark contrast between the detailed duty allegations with respect to the Debtor and the virtually nonexistent allegations with respect to THMI is telling. As District Court Judge Steven Merryday observed in a tangentially related case involving similar—albeit far more egregious—pleading deficiencies: "The omissions are so impairing and so obvious that the disinterested reader tends to doubt their inadvertence." [62]

And the two duties that the Trustee does allege are, to say the least, puzzling. According to the Trustee, Troutman Sanders owed a duty to *THMI* to explain the terms of the stock sale agreement in way that would allow the *Debtor* to make a reasonably informed decision to enter into the transaction in the first place.[63]   And after the stock sale was entered into but before it closed, the Trustee contends Troutman Sanders owed a duty to *THMI* to ensure that *THI* faithfully carried out its promise to continue THMI's business in the ordinary course until the deal closed.[64] The Trustee does not offer any legal support for what appears to be a fairly novel duty.[65]

Law firms that routinely represent buyers in stock sale transactions would undoubtedly be surprised to learn *they* have an obligation to explain the terms of a stock sale transaction to the entity being sold, particularly where the seller (the corporate parent of the entity being sold) is represented by able counsel.  Those same firms would likewise be surprised to learn they have a duty to the entity being sold to ensure the seller faithfully performs certain contractual covenants.  In fact, imposing such a duty appears completely at odds with New York law.[66]

■■■   Because New York law follows the ancient rule *caveat emptor,* a duty to speak generally does not arise under New York law where two parties are on opposite sides of the bargaining table of an arm's-

**58.**   Adv. Doc. No. 1 at ¶¶ 191 & 201.

**59.**   *Id.* at ¶ 217.

**60.**   *Id.* at ¶¶ 188, 204 & 217.

**61.**   *Id.* at ¶ 204.

**62.**   *Estate of Jackson v. Sandnes,* 995 F.Supp.2d 1350 (M.D.Fla.2014).

**63.**   Adv. Doc. No. 1 at ¶ 217.

**64.**   *Id.* at ¶ 188.

**65.**   The Trustee did not file a response to Troutman Sanders' motion to dismiss.  Of course, a response is not required under the Court's local rules.  But a response would have been helpful given the Trustee is advancing such a novel theory.  Regardless of whether she filed a response, the Trustee did not cite any case law in support of its duty theory at the February 2, 2015 hearing on the firm's motion to dismiss.

**66.**   Because the stock sale agreements closed in New York, the parties appear to agree that New York law governs.

length transaction.[67] The Trustee does not seem to dispute that general proposition. And if that general rule applies, Troutman Sanders plainly would not owe a duty to THMI. The Court, however, is aware of three exceptions to the general rule that one party to an arm's-length transaction does not owe a duty to speak.[68]

New York law recognizes a duty to speak where a party to a business transaction: (1) has made a partial or ambiguous statement; (2) stands in a fiduciary or confidential relationship with the other party; or (3) possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.[69] The first exception—which is premised on the idea that once a party has undertaken to mention a relevant fact to the other party, it cannot give only half of the truth—does not apply here since the Trustee's claims are based on the allegation Troutman Sanders did not disclose any relevant facts to THMI. The second exception likewise does not apply because Troutman Sanders and THMI did not—despite the Trustee's conclusory allegations to the contrary— stand in a fiduciary or confidential relationship.[70] Only the third exception—i.e., the "superior knowledge" exception—plausibly applies here.

This argument, although never directly advanced by the Trustee, has some superficial appeal. The Trustee does allege Troutman Sanders, through Grunstein and Brett Baker (a Troutman lawyer who also worked on the deal), had superior knowledge of the potential harm the THMI stock sale could cause THMI.[71] And while the Trustee does not allege that the knowledge Troutman Sanders had was not readily available to THMI, that is certainly a fair inference from the other allegations in the complaint. But the "superior knowledge" exception nonetheless fails for two reasons.

First, neither Troutman Sanders nor THMI was a party to the transaction. Troutman Sanders, of course, was not a signatory to either the THMI or THI–B stock sale. And the Trustee essentially concedes Troutman Sanders did not even represent a party to the transaction. At best, Troutman Sanders was a "representative" of the buyer. And THMI was simply the entity being sold by the seller. The Court is not inclined to extend the "superior knowledge" exception to a situation where the person that allegedly owes a duty to speak is the "representative" of one party to the transaction and the person to whom the duty is owed is an entity being sold by the other party to the transaction.

Second, putting aside the fact that neither Troutman Sanders nor THMI were parties to the March 2006 transactions, the Trustee cannot allege that THMI acted on the basis of mistaken knowledge. Here, THMI did not act on any knowledge. In fact, it did not act at all. It was the entity

---

67. *Brass v. Am. Film Techs.*, 987 F.2d 142 (2d Cir.1993); *United Merch. Wholesale, Inc. v. IFFCO, Inc.*, 2015 WL 4094332, at *8 (E.D.N.Y. Jul. 6, 2015).

68. *Brass*, 987 F.2d at 150–51.

69. *Brass*, 987 F.2d at 150.

70. It appears that these relationships generally are limited to relationships "the law has long adopted—such as trustee and beneficiary—but also more informal relationships where it can be readily seen that one party reasonably trusted another." *Brass*, 987 F.2d at 150–51; *see also Solutia, Inc. v. FMC Corp.*, 456 F.Supp.2d 429, 447 (S.D.N.Y.2006). Those information relationships include: priest and parishioner; bank and depositor; majority and minority shareholders; and close family or friends. *Brass*, 987 F.2d at 150–51; *Solutia*, 456 F.Supp.2d at 447.

71. Adv. Doc. No. 1 at ¶¶ 216 & 238.

being sold. The only entities that could have acted on.mistaken knowledge are the Debtor and THI. But, for the reasons set forth above, the Trustee is estopped from bringing claims on the Debtor's behalf. And there are no allegations that THI somehow acted on mistaken knowledge about what was going to happen to THMI's assets after the stock sale. Because the Trustee has not alleged THMI acted on any mistaken knowledge, the "superior knowledge" exception cannot apply, and the Trustee cannot allege Troutman Sanders owed a duty to THMI. So the Trustee's negligence and fraud claims—to the extent asserted on behalf of THMI—must be dismissed.

### Conclusion

The Trustee cannot bring her claims on the Debtor's behalf without making a mockery of the legal system. So those claims must be dismissed with prejudice. It would not make a mockery of the system for her to bring her negligence and fraud claims on THMI's behalf (Counts II–IV). But she fails to allege the requisite duty to state claims for relief for negligence or fraud. The Court cannot see how the Trustee will ever be able to allege the requisite duty; however, it is ordinarily an abuse of discretion to dismiss claims without one opportunity to cure any pleading defects. For that reason, the Court will dismiss the Trustee's claims on THMI's behalf without prejudice. If the Trustee attempts to reassert the dismissed claims, the Court cautions her to take heed of the Court's discussion regarding proper pleading under Rule 8.

Accordingly, it is

**ORDERED:**

1. In light of the settlement agreement between the Trustee and Grunstein, Grunstein's motion to dismiss [72] is DENIED as moot. Troutman Sanders' motion to dismiss [73] is GRANTED, in part, to the extent set forth in this Order.

2. Count I of the complaint is DISMISSED with prejudice.

3. Counts II–V of the complaint are likewise DISMISSED with prejudice to the extent they are asserted on the Debtor's behalf.

4. To the extent Counts II–V are asserted on THMI's behalf, those counts are DISMISSED without prejudice. The Trustee shall have 14 days to file an amended complaint on behalf of THMI.

5. Troutman Sanders' motion to take judicial notice [74] is GRANTED.

6. By separate notice, the Court has scheduled a status conference in this adversary proceeding for **December 16, 2015, at 9:30 a.m.**