[999 NE2d 1121, 977 NYS2d 676]

Eric Landon, Individually and on Behalf of All Others Similarly Situated, Respondent, v Kroll Laboratory Specialists, Inc., Appellant.

Argued September 3, 2013; decided October 10, 2013

**POINTS OF COUNSEL**

*Anderson & Ochs, LLP*, New York City (*Mitchel H. Ochs, Jason A. Stern* and *Michael J. Hasday* of counsel), for appellant. I. The Appellate Division erred as a matter of law in reinstating the complaint sounding in negligence. (*Matter of New York City Asbestos Litig.*, 5 NY3d 486; *Hall v United Parcel Serv. of Am.*, 76 NY2d 27; *Brothers v New York State Elec. & Gas Corp.*, 11 NY3d 251; *Espinal v Melville Snow Contrs.*, 98 NY2d 136; *Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222; *Credit Alliance Corp. v Arthur Andersen & Co.*, 65 NY2d 536; *Westpac Banking Corp. v Deschamps*, 66 NY2d 16; *Stiver v Good & Fair Carting &*

*Moving, Inc.*, 9 NY3d 253; *Calamari v Grace*, 98 AD2d 74; *Pandolfo v U.A. Cable Sys. of Watertown*, 171 AD2d 1013.) II. The Appellate Division erred in recognizing a new cause for liability in favor of a probationer against a private testing laboratory concerning drug test results reported as part of the terms and conditions of his probation. (*Wilson v City of New York*, 294 AD2d 290; *Hall v United Parcel Serv. of Am.*, 76 NY2d 27; *Du Chateau v Metro-North Commuter R.R. Co.*, 253 AD2d 128; *Murphy v American Home Prods. Corp.*, 58 NY2d 293; *Coleman v Corporate Loss Prevention Assoc.*, 282 AD2d 703; *Santiago v Greyhound Lines, Inc.*, 956 F Supp 144; *Morrissey v Brewer*, 408 US 471; *People v Gilmore*, 63 AD2d 45; *People v Spragis*, 5 AD3d 814; *People ex rel. Williams v Eno*, 134 App Div 527.)

*Eric Landon*, pro se. *Robert N. Isseks*, Middletown, and *Bloom & Bloom, P.C.*, New Windsor (*Kevin D. Bloom* of counsel), on the brief, for respondent. I. The Appellate Division correctly held that a drug testing laboratory owes a duty of care to the subjects of its drug tests. (*532 Madison Ave. Gourmet Foods v Finlandia Ctr.*, 96 NY2d 280; *Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222; *Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579; *Moch Co. v Rensselaer Water Co.*, 247 NY 160; *Chapman v Labone*, 460 F Supp 2d 989; *Coleman v Town of Hempstead*, 30 F Supp 2d 356; *Santiago v Greyhound Lines, Inc.*, 956 F Supp 144; *Stiver v Good & Fair Carting & Moving, Inc.*, 9 NY3d 253; *Espinal v Melville Snow Contrs.*, 98 NY2d 136; *Matter of New York City Asbestos Litig.*, 5 NY3d 486; *Hall v United Parcel Serv. of Am.*, 76 NY2d 27.) II. The complaint alleges legally cognizable harm and loss. (*Kennedy v McKesson Co.*, 58 NY2d 500; *Lando v State of New York*, 39 NY2d 803; *Lapidus v State of New York*, 57 AD3d 83; *Signature Health Ctr., LLC v State of New York*, 28 Misc 3d 543; *Barna v Travis*, 239 F3d 169; *People v Douglas*, 94 NY2d 807; *Central Trust Co., Rochester v Goldman*, 70 AD2d 767; *Shindler v Lamb*, 25 Misc 2d 810, 10 AD2d 826, 9 NY2d 621; *Fugazy Travel Bur. v Ernst & Ernst*, 31 AD2d 924; *Jones v Morgan*, 90 NY 4.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

The issue presented by this appeal is whether plaintiff Eric Landon has stated a cause of action against defendant drug testing laboratory (Kroll) for the alleged negligent testing of his biological sample. Under the circumstances of this case, we find the complaint sufficient to withstand a motion to dismiss.

In January 2002, Landon was convicted of second degree forgery and was sentenced to a five-year term of probation. One of the conditions of Landon's probation was a requirement that he submit to random drug testing. Pursuant to a contract with Orange County and/or the Orange County Probation Department (the County), defendant Kroll, a Louisiana corporation, was engaged to test oral fluid samples provided by probationers for the presence of illicit or controlled substances.

On December 17, 2007, Landon's probation officer directed him to provide an oral fluid sample for testing. The sample was taken using an Intercept DOA Oral Specimen Collection Device, manufactured by Orasure Technologies, Inc. A simultaneous urine sample was not taken. Later the same day, Landon obtained an independent blood test, for the purpose of protecting himself from a potential false positive result. The blood test came back negative for illicit and controlled substances.

Kroll, however, detected the presence of cannabinoids in the oral sample exceeding a screen test cutoff level of 1 ng/ml. The laboratory generated a written report dated December 20, 2007 informing the probation department that Landon's sample had screen tested positive for THC. The probation department then filed a violation of probation (VOP) proceeding, seeking to have Landon's probationary sentence revoked and to have him incarcerated. The VOP petition alleged that Landon had violated two conditions of his probation in that he had tested positive for marijuana and he had falsely reported to his probation officer that he had not used drugs or alcohol.

Landon was arraigned on the VOP petition on January 2, 2008—one day before the term of his probation was set to expire. At that appearance, he provided the court and the probation department with the negative result from his independent blood test. He also submitted to a urine test at that time, which was likewise negative for THC. Nevertheless, the VOP proceedings went forward, requiring a number of court appearances during which the terms of his probation were continued. On March 20, 2008, the petition was withdrawn and the proceedings were terminated in Landon's favor.

Plaintiff commenced this action alleging that Kroll had issued the report reflecting the positive test result both negligently and as part of a policy of deliberate indifference to his rights. The basis for his claim was that the screen test cutoff level employed by Kroll was substantially lower than that recommended by Orasure or by federal standards and that Kroll failed

to disclose those differences in its report. As alleged in the complaint, the screen test cutoff level recommended by Orasure is 3.0 ng/ml and the level recommended by the United States Department of Health and Human Services Substance Abuse and Mental Health Services Administration (SAMHSA) is 4.0 ng/ml—both of which are substantially higher than the 1 ng/ml used by Kroll. The complaint further stated that, despite applicable New York State Department of Health Laboratory Standards requiring samples to be subject to confirmatory testing through the use of gas chromatography-mass spectrometry, Landon's sample was not subject to any type of confirmation test before defendant reported a positive result. In addition, the complaint alleged that proposed revisions to SAMHSA guidelines contemplated requiring the taking of a urine sample, contemporaneous with the oral fluid sample, in order to protect federal workers from inaccurate results. The complaint maintained that Kroll knew of, and failed to disclose, the potential for false positive THC readings when oral fluid samples were tested without a simultaneous urine sample. Moreover, plaintiff alleged that the VOP petition was the result of systemic negligence in Kroll's substance abuse testing practices. He asserted that he was required to serve an extended term of probation, thereby suffering a loss of freedom, as well as emotional and psychological harm, and monetary loss in the form of attorneys' fees expended in defense of the VOP petition.

Supreme Court granted Kroll's motion to dismiss for failure to state a cause of action. The Appellate Division reversed, finding that the complaint stated a cause of action against defendant drug testing laboratory for the negligent testing of plaintiff's biological specimen, notwithstanding the absence of a contractual relationship between the parties (91 AD3d 79 [2d Dept 2011]). The Court recognized the harm that could flow from a false positive test result and reasoned that the laboratory's duty ran only to a circumscribed category of individuals. The Appellate Division certified the following question for our review: "[w]as the opinion and order of this Court dated November 22, 2011, properly made?" (2012 NY Slip Op 64628[U] [2012].) We answer the certified question in the affirmative.

It is well settled that "[i]n assessing the adequacy of a complaint under CPLR 3211 (a) (7), the court must give the pleading a liberal construction, accept the facts alleged in the complaint to be true and afford the plaintiff the benefit of every possible favorable inference" (*J.P. Morgan Sec. Inc. v Vigilant*

*Ins. Co.*, 21 NY3d 324, 334 [2013] [internal quotation marks and citations omitted]). Whether the plaintiff will ultimately be successful in establishing those allegations " 'is not part of the calculus' " (*see J.P. Morgan*, 21 NY3d at 334, quoting *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]).

As a threshold matter, we must determine whether Kroll owed plaintiff a duty of care. We have observed that, "[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm" (*Lauer v City of New York*, 95 NY2d 95, 100 [2000]). Here, while there is no contractual relationship between Kroll and Landon, the laboratory does have a contractual relationship with the County for the testing of biological samples.

Although the existence of a contractual relationship by itself generally is not a source of tort liability to third parties, we have recognized that there are certain circumstances where a duty of care is assumed to certain individuals outside the contract (*see Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138-139 [2002]). As relevant here, such a duty may arise "where the contracting party, in failing to exercise reasonable care in the performance of [its] duties, launche[s] a force or instrument of harm" (*Espinal*, 98 NY2d at 140 [internal quotation marks and citation omitted]). This principle recognizes that the duty to avoid harm to others is distinct from the contractual duty of performance. Accepting the allegations of the complaint as true, Kroll did not exercise reasonable care in the testing of plaintiff's biological sample when it failed to adhere to professionally accepted testing standards and, consequently, released a report finding that plaintiff had tested positive for THC. The alleged harm to plaintiff was not remote or attenuated. Indeed, it was his own biological specimen that was the sole subject of this testing and he was directly harmed by the positive test result causing the extension of his probation and the necessity of having to defend himself in the attendant court proceedings.

Additionally, there are strong policy-based considerations that counsel in favor of finding that Kroll owed a duty to plaintiff under these circumstances. Without question, the release of a false positive report will have profound, potentially life-altering, consequences for a test subject. In particular, here, plaintiff faced the loss of freedom associated with serving an extended period of probation. The laboratory is also in the best position to prevent false positive results. Under the circumstances, we find that Kroll had a duty to the test subject to perform his

drug test in keeping with relevant professional standards and that the existence of its contract with the County does not immunize defendant laboratory.

The situation presented here is also distinguishable from that presented in *Hall v United Parcel Serv. of Am.* (76 NY2d 27 [1990]), where we held that an individual who alleged he was pressured into resigning his employment as the result of a negligently administered polygraph examination did not have a negligence cause of action against the test administrator. We observed that the problem was not the lack of contractual privity between the plaintiff employee and the defendant investigator retained by plaintiff's employer, but rather that plaintiff sought to recover for injury to his reputation—harm that is subject to the heightened standards of a defamation cause of action (*see Hall*, 76 NY2d at 32-33). We declined to recognize a new cause of action, despite the potential for significant harm flowing from inaccurate test results, in part because the legislature had taken action to regulate the use of such devices (*see Hall*, 76 NY2d at 34-35). Indeed, Congress had enacted comprehensive legislation regarding the use of polygraph test results (*see Hall*, 76 NY2d at 35). Under the circumstances, we found no compelling basis to recognize a new tort. Here, by contrast, defendant does not seek to recover for damage to his reputation and there is no apparent statutory remedy for a victim of negligence whose injury was caused by a false positive drug test.

The result we reach today is in keeping with that of several other jurisdictions to recognize a duty in similar circumstances (*see e.g. Berry v National Med. Servs.*, 292 Kan 917, 257 P3d 287 [2011]; *Sharpe v St. Luke's Hosp.*, 573 Pa 90, 821 A2d 1215 [2003]; *Duncan v Afton, Inc.*, 991 P2d 739 [Wyo 1999]), as well as that of certain federal courts concluding that New York would recognize such a duty (*see e.g. Drake v Laboratory Corp. of Am. Holdings*, 2007 WL 776818, *2, 2007 US Dist LEXIS 17430, *5 [ED NY, Mar. 13, 2007, No. 02-CV-1924 (FB/RML)], *affd* 417 Fed Appx 84 [2d Cir 2011]; *Coleman v Town of Hempstead*, 30 F Supp 2d 356, 365 [ED NY 1999]).

In addition, we reject defendant's argument that plaintiff failed to allege that he has suffered a cognizable harm (*see e.g. Martinez v Long Is. Jewish Hillside Med. Ctr.*, 70 NY2d 697, 699 [1987] ["where there is a breach of a duty owed by defendant to plaintiff, the breach of that duty resulting directly in emotional harm is actionable"]). In this procedural posture,

plaintiff's allegations of the loss of freedom occasioned by the extension of his probation and the resulting emotional and psychological harm are sufficient to withstand a motion to dismiss. Defendant places too much weight upon our recent decision in *Dombrowski v Bulson* (19 NY3d 347 [2012]), characterizing it as holding that loss of freedom damages are not recoverable in negligence actions. In that case, we found that a legal malpractice action did not lie against a criminal defense attorney to recover nonpecuniary damages. The decision was based in part on policy considerations, including the potentially devastating consequences such liability would have on the criminal justice system and, in particular, the possible deterrent effect it would have on the defense bar concerning the representation of indigent defendants (*see Dombrowski*, 19 NY3d at 352). Similar policy considerations do not weigh in defendant's favor here.

Finally, we note that this complaint includes much more than a simple declaration by the plaintiff that he did not use marijuana prior to the Kroll test. Rather, the allegations of a loss of freedom, in conjunction with his particularized claim that he passed two contemporaneous drug screens that utilized proper and scientifically reliable testing protocols, are sufficient to withstand a motion to dismiss. Further, we emphasize the procedural posture—although we find that there is a duty that runs from defendant laboratory to plaintiff and that plaintiff has stated a cause of action, we express no opinion as to the ultimate merits of his claim.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question should be answered in the affirmative.

PIGOTT, J. (dissenting). The majority's opinion opens the door for probationers, parolees and others who are subject to mandatory drug testing in the criminal justice system, as well as job applicants and others who are subject to drug and alcohol testing, to bring tort actions against independent third-party drug laboratories based upon the results of such testing. Because the majority's opinion defines duty too broadly, I dissent and would answer the certified question in the negative.

It is the County of Orange that had a contract with defendant Kroll Laboratory Specialists, Inc. to conduct analyses of oral fluid samples of probationers for the presence of illicit and/or controlled substances. Here, a sample was taken from plaintiff

by his probation officer and sent to Kroll for screening. Kroll determined that the sample it received contained cannabinoids in an amount exceeding its 1 ng/mL screen test cutoff level as provided by its contract and reported these results to the Probation Department. The Probation Department filed a violation of probation (VOP) petition against plaintiff with the Orange County Court.

There is no relationship between plaintiff and Kroll, contractual or otherwise. Kroll did not know that plaintiff was the person whose sample was being tested, nor did plaintiff know that Kroll was the one doing the test. The control was strictly with the Probation Department that took the actions here, including deciding to file a VOP petition.

Because it is seemingly offended by what occurred here, the majority creates a new cause of action against third-party drug testing laboratories for "negligent testing" (majority op at 3). But the complaint alleges, at most, that Kroll: (a) had a contract with the County; (b) complied with the terms of the contract; and (c) followed its own guidelines in determining that the level of cannabinoids in plaintiff's sample exceeded its cutoff.

Although the complaint takes issue with Kroll's alleged negligent issuance of the report and "policy of deliberate indifference," plaintiff's primary complaint is really directed at what the Probation Department chose to do with the Kroll results, even after the Probation Department was presented with the negative results of plaintiff's independent blood test and the urine test ordered by the court. Indeed, it was the Probation Department that, in its discretion, took plaintiff's oral fluid sample, failed to simultaneously take a urine sample, filed the VOP petition and, according to the complaint, "insisted that because of [Kroll's] positive test report the VOP proceedings continue." The Probation Department was in the best position—indeed the only one in any position—to determine how the VOP proceedings against plaintiff would be handled, and certainly not Kroll. Thus, in my view, any relief that plaintiff seeks is better directed at the Probation Department rather than an independent drug laboratory like Kroll which, for all intents and purposes, complied with its contractual obligations.

The majority relies on *Espinal v Melville Snow Contrs.* (98 NY2d 136 [2002]) in support of this new-found "negligent testing" cause of action, stating that Kroll, through its alleged failure to adhere to certain "professionally accepted testing standards" (majority op at 6), " 'launched a force or instrument of

harm' " (*Espinal*, 98 NY2d at 141, quoting *Moch Co. v Rensselaer Water Co.*, 247 NY 160, 168 [1928]). Forgetting for a moment that such a finding contorts our holding in *Espinal* beyond its intent, plaintiff's complaint does not even allege that Kroll mishandled, tampered with, improperly collected or misidentified the sample. Moreover, even accepting the allegations in the complaint as true, plaintiff does not deny having any cannabinoids in his system, but only that Kroll utilized a lower cutoff level for cannabinoids than either Orasure Technologies or the United States Department of Health and Human Services Substance Abuse and Mental Health Services Administration's guidelines use for *workplace* drug testing—a choice the County made in its contract.

The majority tells us that this "negligent testing" cause of action "is in keeping with that of several other jurisdictions" that have imposed a similar duty (majority op at 7). But certain of the cases upon which the majority relies arise from jurisdictions that utilize the element of foreseeability in determining whether a duty is owed in the first instance (*see Berry v National Med. Servs., Inc.*, 292 Kan 917, 920, 257 P3d 287, 290 [2011]; *Sharpe v St. Luke's Hosp.*, 573 Pa 90, 96, 821 A2d 1215, 1219 [2003]), whereas under our negligence jurisprudence, foreseeability "determines the scope of the duty once it is determined to exist" (*Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 232 [2001]). Such authority therefore provides no guidance.

The other cases cited by the majority involve specific, narrow allegations of active negligence by the testing laboratory, such as mishandling, misidentifying or improperly collecting the specimen (*see Drake v Laboratory Corp. of Am. Holdings*, 2007 WL 776818, 2007 US Dist LEXIS 17430 [ED NY, Mar. 13, 2007, No. 02-CV-1924 (FB/RML)], *affd* 417 Fed Appx 84 [2d Cir 2011] [allegation that the laboratory sent wrong urine sample for testing]; *Sharpe*, 573 Pa at 92, 821 A2d at 1217 [hospital sued for allegedly mishandling and/or misidentifying urine sample, but the laboratory that performed the testing and reported the results not sued]; *Coleman v Town of Hempstead*, 30 F Supp 2d 356, 360 [ED NY 1999] [allegation that laboratory failed to safeguard the plaintiff's urine sample in chain of custody or provide a split sample for retesting]; *Duncan v Afton, Inc.*, 991 P2d 739, 741 [Wyo 1999] [allegation that laboratory erred in collecting the sample]). Moreover, unlike the situation here, all of the aforementioned cases involve employer/employee relationships.

Plaintiff was subjected to mandatory drug testing as part of the terms and conditions of his probation, and the Probation Department had an obligation to ensure that plaintiff was in compliance. Certainly, Orange County had an interest in conducting such testing, and it was the Probation Department's use, and not Kroll's, of the results that allegedly caused harm to plaintiff. Moreover, while employees may seek legal redress in the civil courts for any harm caused by inaccurate test results, plaintiff was able to seek relief pursuant to CPL 410.70. He did so in this case, and was eventually successful.

The question whether a laboratory's alleged mishandling, misidentification or improper collection of a sample will result in a laboratory being answerable in damages on the ground that such alleged misconduct launched a "force or instrument of harm" was, until now, an open one. But because the complaint in this case does not even come close to the allegations made by the test subjects in *Drake, Sharpe, Coleman* or *Duncan*, the majority's "negligent testing" cause of action would certainly encompass those specific, narrow claims where the laboratory actually played a role in bringing about erroneous test results. And, unlike the laboratories in the cases cited by the majority, it is not alleged that Kroll misplaced plaintiff's sample, tested the wrong sample, improperly collected the sample or even reported inaccurate results. Kroll received the sample from the Probation Department, tested it as per its agreement with Orange County and apprised Orange County that the results exceeded its baseline cutoff. At most, the allegations in the complaint attack Kroll's interpretation of the test results, and not the validity of the sample itself. Thus, even assuming all of the allegations in the complaint are true, Kroll owed no legal duty to plaintiff. If the County of Orange, once sued, chooses to commence a third-party action alleging a contract breach by Kroll, it may do so. But to allow plaintiff to pursue a cause of action in a case such as this opens the door to a host of allegations of a similar nature in areas too numerous to contemplate.

SMITH, J. (dissenting). The law of defamation provides a remedy for people who claim that they have been falsely reported as testing positive for drugs. The remedy is subject to strict limits, but that is as it should be. There is no good reason to invent a new tort. Since plaintiff here has not pleaded a defamation claim—indeed, he sued after the statute of limitations for defamation (CPLR 215 [3]) had run—we should reinstate Supreme Court's order dismissing the complaint.

In *Hall v United Parcel Serv. of Am.* (76 NY2d 27 [1990]), the plaintiff claimed that a detective agency had negligently administered a lie detector test, as a result of which the agency falsely reported to the plaintiff's employer that the plaintiff was a thief. We said:

> "Injuries to an individual's personal and professional reputation such as the injuries alleged here have long been compensated through the traditional remedies for defamation. Of course, this plaintiff cannot avail himself of those remedies, since they are circumscribed by rules of qualified privilege that, in closely analogous circumstances, foreclose recovery in the absence of a showing of malice or other culpable conduct beyond the level of ordinary negligence. Plaintiff's recovery thus depends upon our willingness to recognize a new tort cause of action, or to adopt substantial modifications of the existing defamation remedies." (*Id.* at 32-33 [citations omitted].)

In *Hall*, we decided that no new judicially-created remedy was called for. I agree with the majority that *Hall* does not control this case. In *Hall*, we observed that there were "serious questions . . . about the accuracy and scientific validity" of lie detector tests (*id.* at 33), and recognized that "some governmental oversight and regulation may be desirable" (*id.* at 34). We decided, however, that the problem could be better dealt with by legislative than by judicial action. We relied in part on the existence of extensive federal regulation of lie detectors (*id.* at 34-36). This line of reasoning does not apply to the case now before us. But I would nevertheless reach the same conclusion here that we reached in *Hall*, because I see no reason not to apply in cases like this the time-tested rules that govern defamation actions.

It is of course true that someone who is falsely accused of being a drug user may suffer a grievous injury. The law of defamation provides a remedy for that injury, but the remedy is subject to an important limitation known as the "common interest" privilege. That privilege is described in the Restatement (Second) of Torts § 596:

> "An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter

> correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know."

Thus, when a speaker talks to those with a "common interest in a particular subject matter" about matters that the speaker "may reasonably believe" the listener is "entitled to know," the privilege attaches (*Peavy v WFAA-TV, Inc.*, 221 F3d 158, 176 [5th Cir 2000] [discussing Texas law]). We have made clear that New York follows the Restatement rule (*Liberman v Gelstein*, 80 NY2d 429, 437 [1992]).

As *Hall* implies, the common interest privilege protects defendants in cases involving the allegedly defamatory reporting of test results (*see Chapman v Labone*, 460 F Supp 2d 989, 1003 [SD Iowa 2006] [interpreting Iowa law to establish a privilege for a laboratory conducting a random drug test of an employee of Union Pacific Railroad]). The privilege would apply to a defamation suit based on the facts of this case. Kroll was hired by the Probation Department to test whether controlled substances were present in plaintiff's bodily fluids. The Probation Department and Kroll had a common interest in that subject, and the results of the test were plainly information that the Probation Department was entitled to know—indeed Kroll had a duty to provide those results under its contract with the Department (*see Stukuls v State of New York*, 42 NY2d 272, 279 [1977] ["The (privilege) . . . grew out of the desirability in the public interest of encouraging a full and fair statement by persons having a legal or moral duty to communicate their knowledge and information about a person in whom they have an interest to another who also has an interest in such person"]).

Since the common interest privilege applies, plaintiff could recover for defamation only upon a showing of "malice," which may be made in either of two ways: by proving that the person who uttered the defamatory statement knew it was false or acted in reckless disregard whether it was false or not (a standard derived from *New York Times Co. v Sullivan*, 376 US 254, 279-280 [1964]); or by proving that the statement was motivated by spite or ill will (*Liberman*, 80 NY2d at 437-438). The hurdle is a high one, but it is not insuperable. In *Loughry v Lincoln First Bank* (67 NY2d 369 [1986]), we upheld a jury verdict finding that fellow employees who accused the plaintiff of being a cocaine user had spoken with malice and that the qualified privilege was thus overcome.

Undoubtedly, most plaintiffs who claim that they were falsely branded as drug users by a testing laboratory will fail to

overcome the qualified privilege, and thus will not recover. And plaintiff here might well be unable to win a defamation suit, though his complaint does allege that Kroll was guilty of "a reckless policy or practice of deliberate indifference," which might be enough to get a defamation complaint past a motion to dismiss. In any event, I see nothing wrong with a rule that bars the great majority of claims based on the reporting of drug tests.

The policy judgment underlying the common interest privilege is that the free flow of information among those with a common interest in a subject should be protected in all but cases of egregious wrongdoing (see *Willis v Roche Biomedical Labs., Inc.*, 61 F3d 313, 316 [5th Cir 1995] [the privilege "advances 'the need for free communication of information to protect business and personal interests' "]). The privilege protects a speaker who is not just gossiping, but is doing a job he or she was hired to do. The application of the privilege to the activities of drug-testing laboratories seems to me wholly justified. Society benefits from facilitating the efforts of law enforcement authorities and employers to detect the use of illicit drugs, and that benefit will be significantly impaired if a firm like Kroll must pay damages to any plaintiff who can persuade a jury that it was negligent in testing him.

The majority makes no attempt to explain why drug testing cases should not be governed by the rules that limit recovery for defamation. The majority says, correctly, that the consequences for a person falsely accused of drug use can be severe (majority op at 6), but that is true of anyone falsely accused of serious misconduct. It has long been the law that, where a common interest privilege applies to the communication in question, the plaintiff, however seriously injured, cannot recover without a showing of malice, and I see no reason to create a new tort that effectively nullifies that rule where the occasion for the suit is a drug test.

Judges GRAFFEO, RIVERA and ABDUS-SALAAM concur with Chief Judge LIPPMAN; Judge PIGOTT dissents and votes to reverse in an opinion in which Judge READ concurs; Judge SMITH dissents in a separate opinion.

Order affirmed, with costs, and certified question answered in the affirmative.