<partyblock>

Michael Topiel, Respondent,

against

Caremount Medical, P.C., Appellant.

Caremount Medical, P.C. (Doris R. Varlese of counsel), for appellant.

Michael Topiel, respondent pro se.

Appeal from a judgment of the Justice Court of the Town of Mount Kisco, Westchester County (Mark F. Farrell, J.), entered April 9, 2018. The judgment, after a nonjury trial, awarded plaintiff the principal sum of $2,244.05.

ORDERED that the judgment is reversed, without costs, and the action is dismissed.

Plaintiff commenced this small claims malpractice action against defendant Caremount Medical, P.C. to recover the principal sum of $2,244.05, representing the amount charged him by Northern Westchester Hospital for emergency room services rendered. At a nonjury trial, plaintiff testified that, at an annual physical at defendant's medical center, he had received erroneous results from a potassium blood test he had taken there. He returned to defendant's medical center later that day for a retest of his potassium level and for an electrocardiogram (EKG), which checks for signs of heart disease. Based upon that EKG and the first blood test, but before the second test's results were available, Carolyn Clarick, a doctor at defendant's medical center, directed plaintiff to go to a hospital emergency room, asserting that the EKG results were "severe" and that his life was in danger. At the hospital, plaintiff's retest showed that his potassium levels were normal, as was his EKG. Plaintiff later learned at the hospital that his earlier high potassium levels were a result of lab error and that the finding that the EKG was "severe" was in error. Plaintiff stated that had he known about a possible lab error, he would not have gone to the hospital and is seeking reimbursement of the portion of his hospital bill which was not covered by insurance. Plaintiff did not provide an expert witness to support his cause of action.

Defendant's expert witness testified that an elevated potassium level is a common lab error due to the turbulence of the red blood cells and that it was standard practice to have plaintiff return for a second potassium test and, under the circumstances, an EKG, which is what Dr. [*2]Clarick ordered. Defendant's expert also testified that given the high level of potassium from plaintiff's first test and the changes between plaintiff's 2012 EKG and his current EKG, Dr. Clarick exercised reasonable judgment in directing plaintiff to go to the emergency room to be monitored immediately.

Following the trial, a judgment was entered in favor of plaintiff in the principal sum of $2,244.05.

In a small claims action, our review is limited to a determination of whether "substantial justice has . . . been done between the parties according to the rules and principles of substantive law" (UJCA 1807; see UJCA 1804; Ross v Friedman, 269 AD2d 584 [2000]; Williams v Roper, 269 AD2d 125 [2000]).

Generally, in a malpractice action, expert testimony is necessary to establish the applicable standard of care, as well as a deviation from such standard, which resulted in injury, unless the matter is one within the experience and observation of the average layperson (see generally 530 E. 89 Corp. v Unger, 43 NY2d 776 [1977]; Macey v Hassam, 97 AD2d 919 [1983]). Here, plaintiff did not provide an expert witness, but relied on his own testimony. Plaintiff, thus, failed to establish that the cautious route taken by defendant constituted negligence or malpractice. In any event, defendant's expert showed that Dr. Clarick had been faced with a patient with a lab test result of an elevated potassium level in his blood and a change in his EKG results, which were possible symptoms of a life threatening condition. Consequently, the judgment in favor of plaintiff did not render substantial justice between the parties according to the rules and principles of substantive law (UJCA 1804, 1807).

Accordingly, the judgment is reversed and the action is dismissed.

ADAMS and TOLBERT, JJ., concur.

RUDERMAN, J.P., dissents and votes to affirm the judgment in the following memorandum:

The judgment of the Justice Court in this small claims action, in the principal sum of $2,244.05, should be affirmed.

At trial, plaintiff testified on his own behalf and submitted documents that were admitted into evidence, and Dr. Richard Morel, defendant's deputy chief medical officer, testified on behalf of defendant. By determining the matter in plaintiff's favor, it may be inferred that the court found plaintiff's testimony to be credible, which finding is entitled to substantial deference (see Williams v Roper, 269 AD2d 125 [2000]).

According to plaintiff, on March 13, 2017, he underwent an annual physical with Dr. Carolyn Clarick at defendant's medical facility, preceded by lab tests performed by defendant's employees. After his examination was completed, he received a telephone call instructing him to return for further testing, because his potassium level was "off the charts" and he was in danger of going into cardiac arrest. Plaintiff returned as instructed for a second blood test and an electrocardiogram (EKG). Although the second blood test results would not be available for a few hours, Dr. Clarick said the EKG confirmed her suspicions, and that plaintiff needed to go to the emergency room at Northern Westchester Hospital right away, without waiting for the results of the second blood test.

At the hospital emergency room, more blood was taken for testing, and another EKG was [*3]performed. Plaintiff was informed by Dr. Carol Ann Killian that his potassium levels were normal, and that the finding from defendant's lab earlier in the day was incorrect, which was further confirmed when the second potassium test performed at defendant's lab later came back as normal. Dr. Killian also informed him that the abnormal finding from his earlier EKG taken by defendant was incorrect as well. The emergency room doctor further advised plaintiff that even if the first potassium test results had not been erroneous, he should not have been rushed to the hospital emergency room but should have waited for the retest results.

Plaintiff also testified that he had subsequent conversations with Dr. Thomas J. Lester, defendant's chief medical officer, who apologized for what plaintiff had gone through based on an incorrect potassium test and an incorrect EKG reading. Lester credited plaintiff for defendant's charges for its own testing and related services, but explained that defendant would not reimburse plaintiff for the hospital's charges.[FN1]

Despite this showing, the majority reverses the Justice Court's judgment, which awarded damages representing the portion of the charges for Northern Westchester Hospital's emergency room services that were not covered by plaintiff's insurance carrier, reasoning that plaintiff's evidence was deficient because this action sounds in medical malpractice, which type of claim requires expert testimony. I disagree with the majority's reasoning.

"An appeal from a small claims judgment is permitted on the sole grounds that substantial justice has not been done between the parties according to the rules and principles of substantive law" (Ross v Friedman, 269 AD2d 584, 584 [2000] [internal quotation marks omitted]; see UJCA 1807). While this court has applied, as a principle of substantive law, the requirement of expert testimony in actions that sound exclusively in malpractice (see e.g. Hamill v Great Expressions Dental, 62 Misc 3d 129[A], 2018 NY Slip Op 51880[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2018]), in my view, in the present circumstances the requirement is not applicable, because plaintiff's claim does not sound exclusively in medical malpractice.

"[N]ot every act of negligence toward a patient [is] medical malpractice" (Bleiler v Bodnar, 65 NY2d 65, 73 [1985]). While the distinction between medical malpractice and negligence may sometimes be subtle (see Rabinovich v Maimonides Med. Ctr.,__ AD3d __, 2019 NY Slip Op 08724 [2d Dept 2019]; see also Weiner v Lenox Hill Hosp., 88 NY2d 784, 787 [1996]), a cause of action based on acts such as an error in the supervision of blood collection, like a blood bank's failure to properly test or screen blood, sounds in negligence rather than medical malpractice (Weiner v Lenox Hill, 88 NY2d at 788-789). A medical provider such as defendant may be liable not only for malpractice on the part of the physicians it employs, but also [*4]for negligence on the part of its lab's employees (see Berg v New York Socy. for Relief of Ruptured & Crippled, 1 NY2d 499, 503 [1956]). Even defendant's witness, Dr. Richard Morel, agreed that "the flaw in administering the potassium testing is what led to" everything that followed. That the error by defendant's lab contributed to the doctor's decision-making does not prevent plaintiff from relying on the lab's error as a distinct proximate cause of plaintiff's damages. Had an independent lab performed the blood testing, and the same series of errors ensued, plaintiff could have brought an action against the lab based on a claim of negligence (see Landon v Kroll Lab. Specialists, Inc., 91 AD3d 79, 90 [2011], affd 22 NY3d 1 [2013] ["a drug testing laboratory may be held liable in tort to the subject of a drug test for failing to use reasonable care under the circumstances"]). Because defendant acknowledged that there was lab error as well as physician error, this matter is distinguishable from Rabinovich v Maimonides Med. Ctr. (___ AD3d ___, 2019 NY Slip Op 08724), in which all of the claimed errors were medical in nature.

Moreover, small claims courts are not bound by statutory provisions or rules of practice, procedure, pleading or evidence (see UJCA 1804). Since hearsay evidence is permissible in a small claims action
the hearsay evidence establishing that Dr. Lester admitted to errors in both the potassium test and the EKG reading provides additional proof that defendant's lab was negligent.

As the trial court concluded, "Caremount's treatment and advice . . ., reasonable or otherwise, grew out of the flawed testing done by Caremount personnel in Caremount facilities." This court's characterization of plaintiff's complaint as sounding solely in medical malpractice, despite the proof of admitted and established errors by employees other than Dr. Clarick, is unnecessarily narrow, and the resulting reversal of the determination in plaintiff's favor based on a lack of expert testimony, results in the opposite of substantial justice.

For the foregoing reasons, I would affirm the judgment.

ENTER:

Paul Kenny

Chief Clerk

Decision Date: January 30, 2020

Footnotes

Footnote 1: Dr. Morel's testimony, in effect justifying and agreeing with Dr. Clarick's actions, need not be summarized or addressed here. Since the trial court found in favor of plaintiff, that evidence is not relevant to this analysis; the only question is whether plaintiff's evidence was sufficient to support the determination.~~

<form method="LINK" action="../../slipidx/at_2_idxtable.shtml">

<input type="submit" value="Return to Decision List">

</form>

</partyblock>