D & A Grandview LLC v 60 Davidson LLC (2025 NY Slip Op 50221(U))

[*1]

D & A Grandview LLC v 60 Davidson LLC

2025 NY Slip Op 50221(U)

Decided on February 20, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 20, 2025
Supreme Court, Kings County

D & A Grandview LLC, et al., Plaintiffs,

against
60 Davidson LLC, et al., Defendants.

Index No. 509080/2024

Antin, Ehrlich & Epstein, LLP, New York City (Dana Vlachos of counsel), for plaintiff.
Berger Fink LLP, Forest Hills (Leslie Perez-Bennie of counsel), for defendants 60 Davidson LLC and Ari Farkas.
McGivney Kluger Clark & Intoccia P.C., New York City (Charles R. Cordova of counsel), for defendants ACV Environmental Services, Inc. and ACV Enviro Corporation.
Milber Makris Plousadis & Seiden, LLP, Purchase (Ryan E. Baal of counsel), for defendant Envirotech Preservation Inc.
Manning Gross + Massenberg LLP, New York City (Joshua S. Stern of counsel), for defendant GEI Consultants, Inc.
Weber Gallagher Simpson Stapleton Fires & Newby, LLP, New York City (Alexander J. Papa of counsel), for defendant Adler Industrial Services, Inc.
Barclay Damon LLP, New York City (Matthew J. Larkin of counsel), for defendant Moove USA Corp.

Aaron D. Maslow, J.

Papers used on this motion: NYSCEF Document Nos. 189-207, 240-247, 248, 249-252, 254-266.[FN1]

The instant action concerns an alleged oil spill and subsequent fire which occurred on or about March 31, 2021, at 60 and 82 Davidson Street in Staten Island, NY. Plaintiffs are the owner, its principals, and lessees of the property located at 243 Grandview Avenue, Staten [*2]Island, which was adjacent to 60 and 82 Davidson Street. Defendants are alleged to be the owner, or its principals, of the properties of 60 and 82 Davidson Street; lessees at said locations; installers and/or maintainers of oil tanks at said locations; an insurance company providing liability coverage; and entities which performed consultative or actual remediation work following the oil spill. Plaintiffs claim to have sustained personal injuries and property damage as a result of the oil spill, the resulting fire, and subsequent remediation undertaken through demolition, clean-up, and hazardous materials removal.
In prior orders, this Court determined CPLR 3211 (a) motions filed by various parties (see NYSCEF Doc No. 147). An issue concerning application of a statute of limitations where there is a leap year and expiration on a Sunday resulted in a decision in this case being reported at 2024 NY Slip Op 24270 (Sup Ct, Kings County, Oct. 19, 2024).
The Court is now presented with a motion by defendant GEI Consultants, Inc. (GEI) seeking dismissal of plaintiffs' second amended complaint and all cross-claims that have been and could have been asserted against it (see NYSCEF Doc No. 189). Oral argument was conducted today.
Plaintiffs' causes of action sounded in strict liability pursuant to Navigation Law article 12; negligence against the initial discharging defendants for fire resulting from negligence and other actions; negligence in failing to prevent a continuing oil spill and in failing to adequately remediate the contamination and properly clean up; private nuisance; and negligent infliction of emotional distress. At oral argument, plaintiffs withdrew the causes of action asserted against GEI which sounded in strict liability pursuant to Navigation Law article 12, private nuisance, and negligent infliction of emotional distress. Against GEI, plaintiffs did not assert the cause of action concerning the fire resulting from negligence and other actions because GEI was not an "Initial Discharging Defendant." Remaining against defendant GEI from plaintiffs' second amended complaint is the third cause of action: negligence in failing to prevent a continuing oil spill and in failing to adequately remediate the contamination and properly clean up.
Branch of GEI's Motion to Dismiss Complaint, Now Reduced to

 Cause of Action Regarding Post-Accident Cleanup and Remediation
GEI's motion relies on CPLR 3211 (a) (1) and (7), i.e., a defense founded upon documentary evidence and the pleading failing to state a cause of action.
GEI argues that it met its burden to establish no liability to plaintiffs from its work after the accident, which consisted of professionally designing and developing a plan to remediate the conditions, which was an undertaking it performed for defendant Commercial Lubricants Moove USA Corp., now known as Moove US Corp. (Moove), the lessee of the property where the conflagration started. Other defendants ("cleaner-uppers")—not it—implemented the plan, according to GEI. Not being in privity with plaintiffs, GEI argues that there was no duty owed to plaintiffs.
More specifically, GEI argues the following factual perspective:
GEI was specifically retained pursuant to the terms of an April 22, 2021, Letter Agreement between GEI and Defendant Moove (the "GEI Agreement"), to provide certain environmental and ecological consulting services relating to the release of petroleum based lubricating oils and anti-freeze at the Release Site, which was caused by the March 31, 2021 fire. (Winikow Aff., Exhibit H) As the GEI Agreement makes clear, [*3]various contractors were already onsite performing remedial actions, including the placement of absorbent booms, and that GEI was not involved in the performance of the actual remediation work. The GEI Agreement proposes four separate phases for GEI scope of services, including (A) Phase I — review of existing remedial measures, coordination with regulators, initial ecological investigation of Muskrat Pond, evaluation of efficacy of current remediation efforts, development of conceptual action plan to mitigate off-site impacts; (B) Phase II- Detailed action plan and implementation schedule for mitigating impacts for review and approval of NYSDEC; and (C) implementation of the action plan.
Following the execution of the GEI Agreement, GEI and Moove executed a change order dated June 23, 2021, which increased the Project budget from $40,000 to $185,000, and also indicated potential impact at a nearby Conrail Right of Way ("ROW"). (Winikow Aff., Exhibit I) On September 22, 2021, the New York State Department of Environmental Conservation ("NYSDEC") indicated that it had reviewed and approved the Supplemental Investigation Work Plan submitted by GEI. (Exhibit J)
A subsequent Contract Addendum executed by GEI and Moove dated October 8, 2021 ("Addendum No. 2"), provides that GEI was to perform a subsurface investigation at Plaintiff's Property, by performing some soil borings and water testing analysis. (Winikow Aff., Exhibit K) Plaintiff is not a party to October 2021, Addendum. A subsequent Addendum No. 3 dated May 2, 2022, was also executed. (Winikow, Exhibit L) On February 13, 2023, GEI and Moove executed the last and final contract addendum to cover additional services to document demobilization from the Site and Mariners Marsh Park, and the preparation and submittal of the final Spill Closure Report (SCR) as required by the New York State Department of Environmental Conservation. (Winikow Aff., Exhibit M)
All of GEI's services related to the oil spill was reviewed and approved by the NYSDEC (Exhibits C, N) and on January 26, 2024, the NYSDEC closed the spill case, subject to reopening if "off-site migration of petroleum contaminants that was unknown at the time of closure." (Exhibit O) (NYSCEF Doc No. 207 at 4-6.)
In support of its factual assertions, GEI submitted numerous documents, including contracts, correspondence, and New York State approvals.
While conceding that on a motion to dismiss for failure to state a cause of action where documentary evidence is submitted, a court's inquiry is limited to whether a pleading states a cause of action rather than an ultimate determination of the facts, GEI urges the Court to apply case law holding that dismissal is warranted in those situations where it is conclusively established that there is no cause of action, that a trial court need not blindly accept as true all allegations nor must it draw all inferences from them in plaintiff's favor unless they are reasonable inferences, and that the presumption of truth accorded a complaint's allegations does not apply to factual claims that are inherently incredible or flatly contradicted by documentary evidence.
GEI relies principally on Ossining Union Free School Dist. V Anderson LaRocca Anderson (73 NY2d 417 [1989]), which held that a cause of action for negligent misrepresentation which produces only economic injury requires that the underlying relationship between the parties be one of contract or the bond between them so close as to be the functional [*4]equivalent of contractual privity. Here, GEI was not in privity with plaintiffs. Neither was the bond so close with plaintiffs as to be the functional equivalent of privity, maintains GEI. Further, it is argued that design professionals (GEI was one) are not liable to non-contract parties for common law negligence, citing to various Appellate Division decisions; also, that plaintiffs were not third-party beneficiaries of the contract between GEI and Moove.
Naturally, plaintiffs oppose GEI's motion insofar as it seeks to dismiss the complaint against them — now just the cause of action sounding in their alleged negligence:
15. As evidenced amply above, just three weeks after the oil spill, as evidenced through its Proposal and multiple Contract Addendums, defendant GEI was knee-deep involved in the remediation of Plaintiff's property, up until the closure of the spill case by the NYSDEC, which relied on GEI's representations regarding the condition of Plaintiff's property. This professional engineering firm was entrusted on a daily basis, for over two and one half years, to provide extensive mediation services, including daily field observations, ecological assessments, creation of wells for groundwater monitoring, generation of waste transport documentation, performance of subsurface site investigations, hiring of drilling and laboratory contractors, creating site plans, work plans, and directing demobilization of remediation at Plaintiff's property, just to name a handful of their actions and management of the remediation. The representation by defense counsel that GEI was hired for consulting purposes only, and did not supervise or control the remediation, is belied by their hands on daily, years-long control, management, field investigation, testing and assessments performed evidenced in their exhibits.
16. Of course, the allegations in Plaintiffs' Second Amended Complaint center around the failure of the remediation efforts to abate the contamination of their property of multiple hazards, and that they have suffered permanent damage to their property and catastrophic damage to its value, through no fault of their own. Certainly, GEI's concession of long-standing remedial services, would have more likely than not, been a proximate cause of Plaintiffs' damages; initiation of discovery will yield the evidence of its negligence.
17. The NYSDEC correspondence closing the spill case at issue by no means exonerates any remediation defendants from civil liability. First, the NYSDEC relied upon the information and documentation given to it by GEI — Plaintiff has the right to discovery of it all, including with respect to the qualitative actions by GEI, so that their expert may opine as to their professional undertakings and damages to Plaintiff. Indeed, the correspondence by the NYSDEC leaves the door wide open to further investigation regarding off-site migration of petroleum contaminants that were unknown, environmental conditions related to this spilled case which were unknown, information received which indicates the corrective action was not sufficiently protective of human health and/or the environment and fraud. (NYSCEF Doc No. 254 ¶¶ 15-17.)
Plaintiffs rely on the well-known leading case of Espinal v Melville Snow Contrs. (98 NY2d 136 [2002]), which synthesized case law on liability by contractors to third party tort plaintiffs:
In sum, Moch, Eaves Brooks and Palka identify three situations in which a party who enters into a contract to render services may be said to have assumed a duty of careand thus be potentially liable in tortto third persons: (1) where the contracting party, in [*5]failing to exercise reasonable care in the performance of his duties, "launche[s] a force or instrument of harm" (Moch, 247 NY at 168); (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties (see Eaves Brooks, 76 NY2d at 226) and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely (see Palka, 83 NY2d at 589). These principles are firmly rooted in our case law, and have been generally recognized by other authorities (see e.g. Restatement [Second] of Torts § 324A). (Id. at 140.)
These instances of potential liability in tort to third persons are commonly referred to as the "Espinal exceptions."
Plaintiffs concede that they, who are without fault for the damages they incurred, were not parties to the remediation contract. "[B]ut it is evident, before discovery has even commenced, that defendant GEI assumed a duty of care from which liability may arise to Plaintiffs, where Plaintiffs relied on GEI[']s management and facilitation of remediation, and where Moove was essentially displaced from the remediation, handing the ball over to GEI" (NYSCEF Doc No. 254 at 5-6 [emphasis in original]). Plaintiffs further cite to case law concerning liberal construction of pleadings and affording the allegations the benefit of every possible favorable inference.
In assessing whether to dismiss Plaintiff's cause of action against GEI for negligence in the performance of its remediation activities, the Court takes cognizance of controlling case law. When moving for dismissal pursuant to CPLR 3211 (a) (1), the motion will only be granted if the party submits documentary evidence that utterly refutes the plaintiff's factual allegations and conclusively establishes a defense as a matter of law (see Meyer v New York-Presbyterian Hosp. Queens, 167 AD3d 996, 997 [2018]). When a party moves pursuant to CPLR 3211 (a) (7) to dismiss an action, the standard is whether the pleading states a cause of action, not whether the proponent of the pleading has a cause of action (see Sokol v Leader, 74 AD3d 1180, 1180-1181 [2010]). In deciding the motion, the court must accept the facts as alleged by the plaintiff as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
While a defendant is permitted to submit evidentiary material in support of a motion to dismiss pursuant to CPLR 3211 (a) (7), "[i]f the court considers evidentiary material, the criterion then becomes 'whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one' " (Sokol v Leader, 74 AD3d at 1181-1182, quoting Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). "[A]ffidavits submitted by a defendant 'will almost never warrant dismissal under CPLR 3211 unless they "establish conclusively that [the plaintiff] has no cause of action" ' " (Sokol v Leader, 74 AD3d at 1182, quoting Lawrence v Graubard Miller, 11 NY3d 588, 595 [2008]). "Indeed, a motion to dismiss pursuant to CPLR 3211 (a) (7) must be denied 'unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it' " (Sokol v Leader, 74 AD3d at 1182, quoting Guggenheimer v Ginzburg, 43 NY2d at 275).
Pleadings shall be liberally construed (see IKB Intl., S.A. v Wells Fargo Bank, N.A., 40 NY3d 277 [2023]); Moore Charitable Found. v PJT Partners, Inc., 40 NY3d 150 [2023]; Watkins v New York City Tr. Auth., 230 AD3d 538 [2d Dept 2024]); Wohlgemuth v Land Constr., LLC, 18 AD3d 650 [2d Dept 2005]). 
This Court finds Plaintiffs' position meritorious. Defendant GEI has submitted [*6]documentary evidence regarding its development and implementation of a plan it constructed to remediate the damage from the oil spill and fire, yet the documents merely describe what GEI's duties were on paper. They do not describe what actually transpired nor do they utterly refute that liability could be possible under the Espinal exceptions. There is not a single affidavit from someone with knowledge of GEI's activities at the recovery site describing what work it actually performed, as contrasted with what it committed to perform. GEI's averments are contained in an attorney's affirmation, which also purports to authenticate documents; presumably the attorney did not have personal access to them.
In conducting brief research, the Court located a fellow trial court's decision wherein the Court denied a CPLR 3211 (a) (1) motion predicated on documentary evidence — a contract — in a case where the plaintiff relied on an Espinal exception in its effort to hold a defendant security contractor liable for the criminal deaths of building tenants. "The Sprung complaint alleges that Command breached its duty to provide sufficient security to protect residents (ninth cause of action); was negligent in the hiring and supervision of employees charged with providing security services (tenth cause of action); and breached its contract with Amalgamated to provide security services for the Building (eleventh cause of action)" (Sprung v Amalgamated Dwellings, Inc., 13 Misc 3d 1210[A], 2006 NY Slip Op 51768[U] [Sup Ct, NY County 2006]). This Court adopts the following analysis of the Sprung Court:
Notwithstanding the absence of a direct or third-party beneficiary contractual claim, plaintiff may be able to assert a tort claim arising from negligent performance of contractual duties by Command, as "[n]ot uncommonly, parties outside a contract are permitted to sue for tort damages arising out of negligently performed or omitted contractual duties" (Palka v. Servicemaster Management Services Corp., 83 NY2d 579, 586 [1994]). Although "a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party, ... a party who enters into a contract to render services may be said to have assumed a duty of care and thus be potentially liable in tort to third persons: (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties launch(es) a force or instrument of harm; ... (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties ... and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely" (Espinal v. Melville Snow Contractors, Inc., 98 NY2d 136, 138—140 [2002] ).
Here plaintiff claims that Amalgamated turned over to Command the duty to provide security to the tenants of the Building (Tr. pp. 18, 32). At this stage of the litigation that factual claim cannot be resolved as the Agreement, as quoted above, specifies that the number of security personnel to be provided and the locations to be covered and the times of service and the equipment to be employed are left to future agreement between the parties, and the terms of such future agreements (if any) have not been set forth in the papers submitted. (Sprung v Amalgamated Dwellings, Inc., 2006 NY Slip Op 51768[U], *2-3.)
The order of the Sprung trial Court was affirmed by the Appellate Division, First Department, at 38 AD3d 478 [1st Dept 2007]). This determination appears to be consistent with other case law in which courts have been reluctant to grant pre-answer CPLR 3211 (a) dismissals where plaintiffs allege a duty of care under Espinal exceptions (e.g. Bane v Lease-N-Save Corp., [*7]228 AD3d 1245 [4th Dept 2024] [pleading sufficient to allege application of launching a force or instrument of harm by snow removal contractor]; Cavosie v Hussain, 215 AD3d 1080 [3d Dept 2023] [brake maintenance and inspection shop denied pre-answer dismissal in well-known tragic Schoharie County, NY stretch limousine crash where plaintiffs relied on first Espinal exception, where contracting party, in failing to exercise reasonable care in performance of duties, launches a force or instrument of harm]; Landon v Kroll Lab. Specialists, Inc., 91 AD3d 79 [2d Dept 2011], affd 22 NY3d 1 [2013] [drug testing laboratory may be held liable in tort to subject of drug test for failing to use reasonable care under the circumstances, notwithstanding absence of formal contractual relationship between drug testing laboratory and drug test subject]).
Notably, in affirming the Second Department in Landon, the Court of Appeals wrote:
It is well settled that "[i]n assessing the adequacy of a complaint under CPLR 3211 (a) (7), the court must give the pleading a liberal construction, accept the facts alleged in the complaint to be true and afford the plaintiff the benefit of every possible favorable inference" (J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 21 NY3d 324, 334 [2013] [internal quotation marks and citations omitted]). Whether the plaintiff will ultimately be successful in establishing those allegations " 'is not part of the calculus' " (see J.P. Morgan, 21 NY3d at 334, quoting EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]).
As a threshold matter, we must determine whether Kroll owed plaintiff a duty of care. We have observed that, "[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm" (Lauer v City of New York, 95 NY2d 95, 100 [2000]). Here, while there is no contractual relationship between Kroll and Landon, the laboratory does have a contractual relationship with the County for the testing of biological samples.
Although the existence of a contractual relationship by itself generally is not a source of tort liability to third parties, we have recognized that there are certain circumstances where a duty of care is assumed to certain individuals outside the contract (see Espinal v Melville Snow Contrs., 98 NY2d 136, 138-139 [2002]). As relevant here, such a duty may arise "where the contracting party, in failing to exercise reasonable care in the performance of [its] duties, launche[s] a force or instrument of harm" (Espinal, 98 NY2d at 140 [internal quotation marks and citation omitted]). This principle recognizes that the duty to avoid harm to others is distinct from the contractual duty of performance. Accepting the allegations of the complaint as true, Kroll did not exercise reasonable care in the testing of plaintiff's biological sample when it failed to adhere to professionally accepted testing standards and, consequently, released a report finding that plaintiff had tested positive for THC. The alleged harm to plaintiff was not remote or attenuated. Indeed, it was his own biological specimen that was the sole subject of this testing and he was directly harmed by the positive test result causing the extension of his probation and the necessity of having to defend himself in the attendant court proceedings. (Landon v Kroll Lab. Specialists, Inc., 22 NY3d at 3-4.)
Although a defendant may submit on a CPLR 3211 (a) (1) motion a contract containing a provision that the contract is entered into for the sole mutual benefit of the parties thereto and that no benefit, right, duty or obligation is intended or created to extend to any third party whatsoever, a plaintiff not a party to the contract is not necessarily precluded from advancing a [*8]cause of action against a contracting party. A duty of care may be assumed where a defendant's conduct placed plaintiff in a more vulnerable position than plaintiff would have been in had defendant done nothing or where a defendant's conduct enhanced the risk that plaintiff faced, created a new risk or induced plaintiff to forego some opportunity to avoid risk. (See Garda v Paramount Theatre, LLC, 145 AD3d 964 [2d Dept 2016] [security services company potentially liable to injured person not a party to contract between theatre and security services company], citing Espinal v Melville Snow Contrs., 92 NY2d 136; Heard v City of New York, 82 NY2d 66, 72 [1993]; Gauthier v Super Hair, 306 AD2d 850, 852 [4th Dept 2003].)
Documentary evidence is a fuzzy term and what is documentary evidence for one purpose might not be documentary evidence for another (see Fontanetta v Doe, 73 AD3d 78 [2d Dept 2010]). Encompassed in "documentary evidence," as referred to in CPLR 3211 (a) (1), are judicial records and mortgages (e.g. Magee-Boyle v Reliastar Life Ins. Co. of NY, 173 AD3d 1157 [2d Dept 2019]; leases (see Scheer v Elam Sand & Gravel Corp., 177 AD3d 1290 [4th Dept 2019]; and wills (see Rider v Rainbow Mobile Park Homes, LLP, 192 AD3d 1561 [4th Dept 2021]). Contracts may be deemed documentary evidence but the relevant provisions must be unambiguous (see 413 Throop LLC v Triumph, Church of the New Age, 153 AD3d 1306 [2d Dept 2017]). In any event, the contracts submitted by GEI do not establish a complete lack of liability resulting from the work actually performed as contemplated in them.
As is the situation in the case at bar, "Further, we emphasize the procedural posture—although we find that there is a duty that runs from defendant laboratory[[FN2]
] to plaintiff and that plaintiff has stated a cause of action, we express no opinion as to the ultimate merits of his claim" (Landon v Kroll Lab. Specialists, Inc., 22 NY3d at 5). At a minimum, plaintiffs herein have asserted adequate allegations which entitle them to pursue discovery as the true actions of GEI at the site of the cleanup. It cannot be said presently that GEI performed its duties so expertly that it exercised reasonable care and did not launch a force or instrument of harm, that plaintiffs did not detrimentally rely on the continued performance of GEI's duties, or that GEI did not displace Moove's duty to avoid endangering plaintiffs. Whether plaintiffs will ultimately be successful is not part of this Court's calculus (see J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 21 NY3d 324, 334 [2013]; EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]).

Branch of GEI's Motion to Dismiss Cross-Claims
Co-defendants Moove, ACV Environmental Services, Inc. and ACV Enviro Corporation (the ACVs), and 60 Davidson LLC (60 Davidson) opposed the branch of GEI's motion to dismiss cross-claims already asserted and those to be asserted against GEI.
60 Davidson argued that GEI's motion was premature because its cross-claim was not yet asserted when GEI moved. Despite this, the Court will consider GEI's request for relief for the sake of judicial economy. Likewise, even though GEI's motion was ostensibly late, as argued by the ACVs, the Court prefers to determine it.
The cross-claims sound in contribution and indemnification. The Court finds that dismissal would be premature. The viability of claims of contribution and indemnification [*9]should await at least the discovery phase of this litigation. As with respect to the branch of GEI's motion seeking dismissal of plaintiffs' complaint, GEI relies on its documentary evidence, which this Court found not to be determinative of potential liability. And likewise the Court relies on its analysis to hold that these cross-claims should not be dismissed at the present stage.
GEI does possess a valid argument that allegations of contractual indemnification with respect to the cross-claims of the ACVs interposed against it, wherein contractual indemnification and a contractual obligation to procure insurance are alleged (see NYSCEF Doc No. 248 ¶¶ 48-50, third and fourth cross-claims in answer of the ACVs to the second amended complaint) lack merit. This Court agrees with GEI's position. GEI and the ACVs had no contractual relationship. These cross-claims of the ACVs against GEI should be stricken.
GEI's only contractual relationship with any co-defendant was with Moove. Therefore, any cross-claims by any other co-defendant predicated on a contractual relationship with GEI are unfounded.
Finally, Moove opposes dismissal of the branch of GEI's motion to dismiss cross-claims insofar as Moove interposed its 19th affirmative defense and cross-claim against GEI, wherein it is alleged that GEI failed to procure compliant insurance (see NYSCEF Doc No. 99 ¶¶ 119-123). GEI submitted what it claims evidences proper procurement of insurance. This submission was made on February 19, 2025 (yesterday) in a "Corrected Exhibit R" in included in reply (see NYSCEF Doc No. 260) and Moove did not have an adequate opportunity to review the submitted insurance policy; also Moove argues that submitting it in reply was improper. The Court denies the branch of GEI's motion to dismiss cross-claims insofar as Moove interposed its 19th affirmative defense and cross-claim against GEI, wherein it is alleged that GEI failed to procure compliant insurance. Moove did not have sufficient time to assess whether the submitted insurance policy comported with what Moove believes was required. Counsel for GEI and Moove are encouraged to consult on this matter. If the policy is deemed satisfactory by Moove, the parties can file a stipulation withdrawing the 19th affirmative defense. If the policy is deemed unsatisfactory by Moove, GEI is permitted to dispute this and move again with respect to this issue.

Conclusion
Accordingly, it is hereby ORDERED as follows:
(1) That branch of defendant GEI Consultants, Inc.'s motion seeking dismissal of plaintiffs' second amended complaint is DENIED.
(2) That branch of defendant GEI Consultants, Inc.'s motion seeking dismissal of all cross-claims that have been and could have been asserted against it is GRANTED with respect to the third and fourth cross-claims in the answer of defendants ACV Environmental Services, Inc. and ACV Enviro Corporation to the second amended complaint, is GRANTED to the extent that any defendants besides Moove USA Corp. alleged liability based on a contractual relationship with GEI Consultants, Inc., and is otherwise DENIED.
(3) The third and fourth cross-claims in the answer of defendants ACV Environmental Services, Inc. and ACV Enviro Corporation to the second amended complaint are stricken insofar as they are asserted against defendant GEI Consultants, Inc., and so too are other cross-claims, besides those of Moove USA Corp., asserted against GEI Consultants, Inc. which are predicated on a contractual relationship.
(4) Defendant GEI Consultants, Inc. is granted leave to move again to dismiss the 19th affirmative defense and cross-claim alleged in the answer of defendant Moove USA Corp.
Dated: February 20, 2025
Hon. Aaron D. Maslow
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:In the interests of having as much material before it to adjudicate this motion, objections to amended papers, as well as to the untimeliness of filings, are rejected.

Footnote 2:It is understood that GEI also performed laboratory analysis of soil samples (see NYSCEF Doc No. 198 at PDF 10, ¶ 14 [a], PDF 15, ¶ D). This is analogous to the testing performed by the moving defendant in Landon.